Nino CAMPAGNA, Appellant,

v.

Joseph Francis ROGAN, Appellee.

Superior Court of Pennsylvania.

Argued March 18, 2003.

Filed July 10, 2003.

---

Kathleen A. Walsh, Scranton, for appellee.

Before: STEVENS, BOWES, & CAVANAUGH, JJ.

STEVENS, J.

¶ 1 This is an appeal from the judgment entered in the Court of Common Pleas of Luzerne County following the jury's verdict in favor of Appellee Joseph Francis Rogan in a personal injury action resulting from a motor vehicle accident.[1] On appeal, Appellant Nino Campagna contends (1) the trial court should have ordered a new trial on the issue of damages since the jury's verdict finding Appellee was not a substantial factor in bringing about Appellant's injuries was against the weight of the evidence, and (2) the trial court should have granted Appellant's request for a directed verdict and/or granted judgment notwithstanding the verdict (JNOV) in favor of Appellant on the issue of causation.[2]

---

1. We note that judgment was entered in this case on May 3, 2002, after Appellant filed his notice of appeal. Since the entry of final judgment was done during the pendency of the appeal, it is sufficient to perfect our juris- diction. *Johnston the Florist, Inc. v. TEDCO Construction Corp.*, 441 Pa.Super. 281, 657 A.2d 511 (1995).

2. We have renumbered Appellant's issues. We note that Appellant also specifically alleg-

We reverse and remand for proceedings consistent with this decision.

¶ 2 The relevant facts and procedural history are as follows: On November 14, 1997, Appellant was driving his 1997 Ford Explorer on a snow covered roadway in Butler Township when Appellee's Pontiac Grand Prix spun into Appellant's lane of travel and struck the front end of Appellant's Ford. On November 10, 1999, Appellant instituted this action by writ of summons, and he filed a complaint on August 11, 2000, alleging that Appellee was negligent in the operation of his motor vehicle, and that such negligence caused injury to Appellant, including a herniated disc. On November 6, 2000, Appellee filed an answer with new matter, and on March 13, 2002, the parties proceeded to a jury trial.

¶ 3 During trial, Appellee testified that the road was covered with a mixture of snow and freezing rain when he lost control of his vehicle. N.T. 3/13/02 at 15, 19. As a result, he crashed into Appellant's vehicle, which was traveling in the opposite direction, thereby damaging his own vehicle beyond repair. N.T. 3/13/02 at 22. Appellee admitted that the fact his vehicle spun out of control was the reason for the collision at issue. N.T. 3/13/02 at 26.

¶ 4 Appellant testified that on November 14, 1997, he was driving his Ford Explorer on Route 309 when Appellee's car swerved into his lane, resulting in a collision. N.T. 3/13/03 at 56. Appellant described the accident as severe, resulting in extensive damage to his vehicle. N.T. 3/13/03 at 58–59. Appellant testified that, when the vehicles collided, his neck snapped backwards, and he was hit in the face with the air bag. N.T. 3/13/03 at 58. Following the accident, Appellant experienced chronic neck pain and headaches. N.T. 3/13/03 at 65. His wife, who is a nurse, spoke to

Appellant's family doctor, James W. Galasso, III, D.O., and on January 13, 1998, Appellant was examined by Dr. Galasso. N.T. 3/13/03 at 66. Additionally, Appellant indicated that, on January 29, 1998, Eric Wolfson, M.D., examined him and prescribed physical therapy. N.T. 3/13/03 at 70–73. Appellant, who was forty-four at the time of the accident, further testified that he was the soccer coach for Crestwood High School and that, prior to the accident, he was able to practice with the team, demonstrating all necessary soccer moves. N.T. 3/13/03 at 38. However, after the accident, Appellant was unable to continue actively demonstrating the soccer moves due to persistent pain in his neck and was required to take a sideline approach to coaching. N.T. 3/13/03 at 38–39. Appellant testified that prior to the accident he was in excellent physical health and had rarely required medical care. N.T. 3/13/03 at 40. He admitted that he visited his family doctor four times from January, 1997 to July, 1997 because he was suffering from migraine headaches and he had developed benign lumps under his skin. N.T. 3/13/03 at 40–41. Appellant testified that, prior to the accident, the migraines did not interfere with his daily routine. N.T. 3/13/03 at 42. However, after the accident, he was unable to perform basic yard work and household duties. N.T. 3/13/03 at 42–43. Appellant indicated that, although he suffered migraine headaches prior to the accident, he did not suffer chronic neck pain until after the accident. N.T. 3/13/03 at 80–81.

¶ 5 Appellant's wife, Barbara Campagna, testified that she is an emergency room nurse, and prior to Appellant visiting Dr. Galasso, she treated Appellant at home. N.T. 3/13/03 at 156–158. Mrs. Campagna

---

es that, to the extent a new trial is required, the trial should be limited to the issue of damages only. This argument is intertwined with his weight of the evidence claim.

testified that, following the accident, Appellant experienced chronic neck pain. N.T. 3/13/03 at 160–162.

¶ 6 Eric Wolfson, M.D., testified that he is a neurosurgeon, and he initially examined Appellant on January 29, 1998. Deposition of Eric Wolfson, M.D., dated 6/21/01 at 9. Dr. Wolfson testified that Appellant complained of neck pain and had a decreased range of motion in his neck. *Id.* at 10–11. Dr. Wolfson indicated that Appellant had an MRI[3] on January 16, 1998, which revealed herniations of discs C4–5 and C6–7. *Id.* at 11–12. Based on a reasonable degree of medical certainty, Dr. Wolfson opined that Appellant was suffering from cervical muscular strain and that such injury was the result of the November 14, 1997 motor vehicle accident. *Id.* at 12–13. Dr. Wolfson recommended that Appellant undergo physical therapy, which he did, and Dr. Wolfson examined Appellant in April of 1999. *Id.* at 13–14. Appellant continued to complain of neck pain, and Dr. Wolfson ordered another MRI, which was performed on April 9, 1999 and revealed herniations of discs C4–5 and C6–7. *Id.* at 16. Dr. Wolfson opined that, even though Appellant underwent physical therapy, the disc herniations did not improve. *Id.* at 16–17. Dr. Wolfson diagnosed Appellant as suffering from persistent neck pain which interfered with Appellant's daily activities, and he indicated to a reasonable degree of medical certainty that the pain resulted from herniated discs which Appellant sustained in the automobile accident. *Id.* at 19, 33. Dr. Wolfson specifically opined that Appellant's pain was not caused by degenerative disk disease,[4] and this opinion was supported by an X-ray taken on June 3, 1999, which revealed no degenerative disk disease. *Id.* at 19–22.

¶ 7 James W. Galasso, III, D.O., testified that he is Appellant's family physician and that he first treated Appellant prior to the accident in 1995. Deposition of James W. Galasso, III, D.O., dated 2/1/02 at 8, 11. Dr. Galasso testified that Appellant was healthy, but suffered from occasional tension/migraine headaches prior to the accident and benign fatty tumors under the skin. *Id.* at 11–12. Dr. Galasso admitted that Appellant complained of neck discomfort prior to the accident, but that such discomfort was related to migraines. *Id.* at 15. Dr. Galasso testified that he examined Appellant on January 13, 1998, after the automobile accident, and Appellant complained of increased neck pain and headaches. *Id.* at 17. Because Appellant had a decreased range of motion in his neck, Dr. Galasso ordered an MRI, which was performed on January 16, 1998. *Id.* at 18–19. Dr. Galasso confirmed that the MRI revealed herniated discs at C4–5 and C6–7. *Id.* at 19. Dr. Galasso opined that the herniated discs aggravated Appellant's pre-existing migraine condition, making the headaches more intense. *Id.* at 22–23. Dr. Galasso testified "with a high degree of medical certainty" that the herniated discs and aggravation of Appellant's migraine headaches were caused by the November 14, 1997 motor vehicle accident. *Id.* at 23. Dr. Galasso opined that Appellant's headaches increased since the accident because Appellant suffered herniated discs in his neck as a result of the accident. *Id.* at 23–24.

---

**3.** "An MRI, [Magnetic Resonance Imaging], is an imaging test that uses a very strong magnet to generate a picture of, in this case, the neck bones and soft tissue within the neck." Deposition of Eric Wolfson, M.D., dated 6/21/01 at 12.

**4.** Degenerative disc disease is part of the natural aging process whereby the discs lose their elasticity and degenerate. Deposition of Peter Alan Feinstein, D.O., dated 5/18/01 at 27.

¶8 On cross-examination, Dr. Galasso admitted that Appellant complained of a stiff neck and headache on June 19, 1997 and July 3, 1997, prior to the accident at issue. *Id.* at 36. Dr. Galasso indicated that Appellant had muscle tightness and decreased range of motion at this time. *Id.* at 37.

¶9 Dawn Shebelock, a physical therapist at John Heinz Rehabilitation Center, testified on Appellee's behalf at trial. Ms. Shebelock testified that she treated Appellant on March 2, 1998, and Appellant complained of pain on both sides of his neck. N.T. 3/13/03 at 182–183. Ms. Shebelock testified that, at this time, Appellant's range of motion and neck strength was normal. N.T. 3/13/03 at 185–186. Ms. Shebelock also testified that she treated Appellant on April 3, 1998, and his subjective complaints of pain were improved. N.T. 3/13/03 at 188. She testified that his range of motion and neck strength were normal. N.T. 3/13/03 at 189–190. On cross-examination, Ms. Shebelock indicated that Appellant was not pain free when he was discharged from rehabilitation. N.T. 3/13/03 at 203.

¶10 Peter Alan Feinstein, M.D., an orthopedic surgeon, testified on behalf of Appellee at trial. Dr. Feinstein testified that he evaluated Appellant on April 27, 2000 in connection with the lawsuit at issue. Deposition of Peter Alan Feinstein, M.D., dated 5/18/01 at 18–20. Dr. Feinstein testified that he reviewed an X-ray taken of Appellant's neck on April 9, 1999, and he concluded that the X-ray was normal. *Id.* at 24. Most importantly, he concluded that there was no evidence of any cervical sprain, strain, or spasm. *Id.* at 24. With regard to the MRI of Appellant's neck taken on January 16, 1998, Dr. Feinstein indicated that the MRI revealed degenerative disk disease at multiple levels. *Id.* at 26. He concluded that there was some bulging or central protrusion,[5] which appeared to be at the C5–6 disc; however, such bulging was consistent with the degenerative/aging process and was inconsistent with a herniated disc from a traumatic injury. *Id.* at 26. Dr. Feinstein testified that bulging discs can develop into herniated discs over time and that such an occurrence is caused by the normal aging process, as well as by trauma. *Id.* at 29. He specifically opined that the results of Appellant's January 16, 1998 MRI were not indicative of trauma. *Id.* at 29. Dr. Feinstein indicated that he disagreed with Dr. Wolfson's conclusion that Appellant suffered any disc herniation and that, even assuming the bulges were herniations, such resulted from the natural aging process. *Id.* at 31. Dr. Feinstein opined that, whether the MRI revealed disc bulges or herniations, the abnormalities would not have caused Appellant pain because they were not pinching any nerves. *Id.* at 31. Dr. Feinstein testified that he also reviewed Appellant's neck MRI, which was performed on April 9, 1999. *Id.* at 32. Dr. Feinstein indicated that the MRI revealed a subluxation of disc C3–4, and generalized degenerative disk disease at discs C3–4, C4–5, and C5–6. *Id.* at 32–33. He opined that the findings were consistent with disc bulging at discs C3–4 and C6–7, meaning that there was no herniated disc; however, there was present minimal evidence of disc protrusion at disc C4–5, which was consistent with a small degenerative herniated disc. *Id.* at 33. Dr. Feinstein indicated that the herniation at disc C4–5 was degenerative and

---

**5.** Dr. Feinstein testified that "a bulge and protrusion are basically the same thing, meaning that the disc is prominent in an area but is still contained within its ligament and within its normal confines." *Id.* at 27–28. He contrasted bulges and protrusions of discs with herniations, which result in pinched nerves. *Id.*

not traumatic in nature and that it was not seen on the prior MRI. *Id.* at 33. With regard to the herniated disc (C4–5), Dr. Feinstein specifically stated: "[I]n this case, certainty [it is] the case, that any change in the disc situation at that level was related to progression of degenerative changes that were long-standing and preexisting, as opposed to any motor vehicle accident, . . . ." *Id.* at 34–35. Dr. Feinstein testified that when he examined Appellant his range of motion and strength were normal and there was no objective evidence of injury, spasm, or atrophy to Appellant's neck. *Id.* at 36, 38–40. Dr. Feinstein testified that Appellant told him that he received no treatment for headaches or neck pain prior to the accident, however, Appellant's statements were inconsistent with Dr. Galasso's record. *Id.* at 41. Dr. Feinstein testified that Appellant's subjective complaints of neck and head pain prior to the accident were the same as those he made after the accident. *Id.* at 45. Dr. Feinstein indicated that none of the MRI findings were attributable to the accident at issue and that there was no objective evidence supporting Appellant's indication of pain in 2000. *Id.* at 219–220. However, Dr. Feinstein admitted that Appellant suffered whiplash or a sprain/strain of his neck as a result of the automobile accident. Specifically, when asked whether, to a reasonable degree of medical certainty, Dr. Feinstein had an opinion as to whether Appellant suffered injury as a result of the November 1997 accident, Dr. Feinstein answered: "It was my opinion, within a reasonable degree of medical certainty, that he had a diagnosis of whiplash or a myofascial or a sprain/strain type of injury to his neck area." *Id.* at 47. With regard to the extent of injury suffered by Appellant, the following exchange occurred between Appellee's counsel and Dr. Feinstein:

**Q:** Is there any significance to you as a physician that the Plaintiff did not seek medical treatment for over two months after the accident?

**A:** Yes, it would indicate that either his symptom[s] were not particularly bothersome or a problem for him or significant, or, and I believe somewhere he even presents his assessment, that his symptom[s] were consistent with the problems he had before, and he didn't think that there was anything new or— needed to have treatment.

**Q:** Well, Dr. Feinstein, you reviewed the Plaintiff's deposition transcript.

**A:** Yes, I did. I'll refer you to my April 13, 2001 report regarding review of that record, and, in fact, his deposition indicates on Page 50, to my recollection, that he waited until January to seek any treatment for the motor vehicle accident because his migraine symptom[s] were actually similar to that which had preexisted, and he was not sure that there was any significant difference.

**Q:** The complaints that Mr. Campagna had when you examined him in April of 2000, do you believe those complaints were attributable to the subject accident?

**A:** No, I don't.

**Q:** Do you have an opinion as to whether Mr. Campagna is limited at all with regard to his activities?

**A:** I have an opinion that he's made a full and complete recovery from the motor vehicle accident and that he would have no limitations on any of his activities in terms of recreational, vocational, or otherwise.

**Q:** Do you believe further treatment is required?

**A:** No.

*Id.* at 48–50.

¶ 11 At the conclusion of all testimony, Appellant requested a directed verdict on the issue of causation so that the jury would be instructed to deliberate solely on the issue of damages. N.T. 3/13/02 at 214. The trial court denied the request. N.T. 3/13/02 at 214. The jury was then given a verdict sheet, which contained the following questions: 1. Do you find that the Defendant, Joseph Francis Rogan, was negligent? 2. Do you find the Defendant's, Joseph Francis Rogan's, negligence was a substantial factor in causing the injuries sustained by the Plaintiff, Nino Campagna? If you answered Question # 2 "Yes," please proceed to Question # 3. If you answered Question # 2 "No," verdict is for the Defendant and you should return to the courtroom. 3. State the amount of damages you find the Plaintiff, Nino Campagna, has suffered: (a) Past, present, and future pain and suffering and (b) Past, present, and future loss of the enjoyments of life. The jury concluded that Appellee was negligent, but that such negligence was not a substantial factor in causing Appellant's injuries. As such, the jury awarded Appellant zero damages.

¶ 12 On March 23, 2002, Appellant filed a post-trial motion raising, *inter alia,* the issues presented on appeal. By order filed March 26, 2002, the trial court denied the post-trial motion, and Appellant filed a notice of appeal on April 5, 2002. The trial court ordered Appellant to file a statement pursuant to Pa.R.A.P.1925(b), Appellant filed a timely Pa.R.A.P.1925(b) statement raising the issues presented on appeal, and the trial court filed an opinion pursuant to Pa.R.A.P.1925(a). Final judgment was entered by praecipe on May 3, 2002.

¶ 13 Appellant first contends that the trial court should have ordered a new trial since the jury's verdict finding Appellee was negligent, but not a substantial factor in bringing about Appellant's injuries, was against the weight of the evidence. We agree.

Because an appellate court, by its nature, stands on a different plane than a trial court, we are not empowered to merely substitute our opinion concerning the weight of the evidence for that of the trial judge. Instead, the focus of appellate review is on whether the trial judge has palpably abused his discretion, as opposed to whether the appellate court can find support in the record for the jury's verdict.

*Zeffiro v. Gillen,* 788 A.2d 1009, 1012 (Pa.Super.2001) (citations omitted).

Our standard of review in denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion. A new trial will be granted on the grounds that the verdict is against the weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice.

*Cangemi v. Cone,* 774 A.2d 1262, 1265 (Pa.Super.2001) (citations omitted).

¶ 14 Here, Appellant contends that there was a consensus among Appellant's and Appellee's experts that Appellant suffered some injury as a result of the automobile accident. Specifically, Appellant argues that, since Appellee's expert witness, Dr. Feinstein, admitted that Appellant suffered some whiplash/cervical sprain or strain to his neck, the jury erred in concluding that Appellee's negligence was not a substantial factor in causing Appellant harm. Appellant contends that the jury should have found that Appellee's negligence was a substantial factor and then should have proceeded to determine whether Appellant was entitled to dam-

ages. Based on recent appellate decisions, we agree with Appellant's assertions.

Where there is no dispute that the defendant is negligent and both parties' medical experts agree the accident caused **some** injury to the plaintiff, the jury may not find the defendant's negligence was not a substantial factor in bringing about at least **some** of plaintiff's injuries. Such a verdict is contrary to the weight of the evidence adduced at trial. In other words, a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic.

\* \* \*

[W]here the experts agreed the accidents caused some injury, but the jury found to the contrary, that finding was determined to have contradicted all the evidence of the medical experts. A new trial on damages was warranted because such a verdict bears no rational relation to the evidence adduced at trial.

*Andrews v. Jackson,* 800 A.2d 959, 962–963 (Pa.Super.2002) (citations, quotation, and quotation marks omitted) (emphasis in original). *See Lemmon v. Ernst,* 822 A.2d 768 (Pa.Super.2003).

¶ 15 In *Majczyk v. Oesch,* 789 A.2d 717, 723 (Pa.Super.2001), this Court synthesized existing case law to hold that "where a defendant concedes liability and his or her expert concedes injury resulting from the accident that would reasonably be expected to cause compensable pain and suffering, the jury's verdict is against the weight of the evidence where it finds for the defendant [on the issue of causation]." (emphasis omitted). In *Andrews,* we examined our holding in *Majczyk* and specifically concluded the following:

Our reading of *Majczyk* does not lead us to conclude that a jury may disregard uncontroverted expert witness testimony that the accident at issue did not **cause** some injury. Rather, we conclude the jury must find the accident was a substantial cause of at least some injury, where both parties' medical experts agree the accident caused some injury. While the jury may then find the injuries caused by the accident were incidental or non-compensable and deny damages on that basis, the jury may not simply find the accident did not 'cause' an injury, where both parties' medical experts have testified to the contrary.

*Andrews,* 800 A.2d at 964 (emphasis in original). *See Lemmon, supra* (holding that where both parties' experts conceded the plaintiff suffered some injury a new trial limited to damages was required); *Hyang v. Lynde,* 820 A.2d 753 (Pa.Super.2003) (holding that where defense expert conceded the plaintiff suffered minor injury the jury should have found the defendant to be a substantial contributing factor).

■ ¶ 16 In the case *sub judice,* we conclude that both parties' medical experts agreed that Appellant sustained some injury as a result of the accident; however, they differed as to the extent and duration of the injury. Specifically, Drs. Wolfson and Galasso, who were Appellant's experts, testified that two MRIs revealed that Appellant suffered herniated discs. Both medical experts testified to a reasonable degree of medical certainty that the herniated discs resulted from the November 14, 1997 accident. Appellee's expert, Dr. Feinstein admitted that Appellant suffered whiplash/cervical sprain or strain as a result of the accident; however, he opined that the injury was minor and temporary. He opined that the MRI revealed degenerative disc disease, which did not result from the accident.

¶ 17 Based on the medical experts' testimony, we conclude that the jury was not permitted to disregard the uncontraverted evidence of causation and find Appellee's negligence was not a substantial factor in causing at least some injury to Appellant.

> Had the jury found the accident caused some injury to [Appellant], but declined to award damages because the jury concluded the injury was so minor as to be noncompensable, we would not [need] to disturb their verdict. However, the jury's verdict that [Appellant] was not 'injured' in the accident goes against the weight of the competent evidence adduced by both parties' medical experts at trial.

*Andrews*, 800 A.2d at 965 (citations omitted).

¶ 18 We conclude that the jury was not permitted to find, based on all of the experts' testimony that Appellant suffered some injury, that Appellee's negligence was not a substantial factor in causing Appellant some injury. Rather, the jury should have answered "Yes" to the substantial factor question, and then they should have proceeded to determine whether the injury was compensable. The jury's verdict that Appellant was not "injured" is against the weight of the evidence, and, therefore, we find it necessary to reverse and remand for a determination of damages only.

¶ 19 With regard to the new trial on damages, we conclude that we are bound by this Court's recent decision in *Hyang, supra*, wherein this Court held that the new trial should be limited to damages resulting from the uncontroverted injury.

As in the case *sub judice*, the experts in *Hyang* disagreed as to the severity of the injury suffered by the plaintiff, however, the defense conceded that the plaintiff suffered some strain to her neck and back. On appeal, we agreed with the trial court's conclusion that a new trial was required since the jury should have found that the defendant caused the plaintiff injury. However, we specifically stated that the trial regarding damages should be limited to those damages conceded to by all experts. We refused to give the plaintiff a "second bite at the apple." As such, based on *Hyang*, we conclude that, on remand, Appellant may seek damages for those injuries that were uncontested or conceded to by Appellee's expert only, i.e., whiplash/cervical sprain or strain. "As the jury verdict regarding the 'major' injuries is supported by the evidence, it is only those remaining uncontested injuries that require resolution. Discounting the obvious jury determination that the major injuries are not related to the accident defies justice and common sense." *Hyang*, 820 A.2d at 756 (emphasis omitted). On remand, the jury may determine, if it so desires, that Appellant's "discomfort was the sort of transient rub of life for which compensation is not warranted." *Majczyk*, 789 A.2d at 726 (citation omitted).[6]

¶ 20 Reversed; Remanded; Jurisdiction is relinquished.

---

**6.** We conclude that Appellant's request for a directed verdict, JNOV, and a new trial on the basis of the weight of the evidence are closely related. *See Kennedy v. Sell,* 816 A.2d 1153 (Pa.Super.2003). In light of the foregoing, we conclude that the trial court erred in failing to grant Appellant's request for a directed verdict and/or JNOV on the issue of causation. Since we are remanding for a new trial on the issue of damages, we find it unnecessary to address Appellant's directed verdict and JNOV issues further.