J-A01031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| TUMULY GIKO | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| JAMES CALGIANO | : | No. 1262 EDA 2022 | |

Appeal from the Judgment Entered April 20, 2022
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2018-010098

BEFORE:  LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                **FILED MARCH 29, 2023**

Tumuly Giko appeals from the judgment,[1] entered in the Court of Common Pleas of Delaware County, following the trial court's order denying her post-trial motion for judgment notwithstanding the verdict and/or a new trial on damages only.  Following trial, the jury found that Giko sustained injuries in a rear-end motor vehicle accident and that defendant James Calgiano was 75% liable.  The jury, however, awarded Giko zero damages. We conclude the jury's award of zero damages is against the weight of the evidence, and, therefore, we reverse and remand for a new trial limited to damages.

---

[1] We have corrected the caption to indicate this appeal is taken from the April 20, 2022 judgment entered on the verdict, and not the April 5, 2022 order denying post-trial motions.

Giko sustained injuries as a result of an automobile accident that occurred on September 20, 2018 at 9:20 a.m. near the intersection of Middletown Road and Old Baltimore Pike in Media, Delaware County. Giko was stopped at a stop sign and was rear-ended by Calgiano. At the scene, Giko declined medical treatment and proceeded to work. Later that day, however, Giko's supervisor suggested she leave work early and get treatment for neck and back pain. Giko went to an Urgent Care facility for evaluation. There, she complained of lower back, neck, and shoulder pain, was prescribed medication, and instructed to apply ice for 2-3 days, and then heat. From September 26, 2018, through February 26, 2019, Giko attended physical therapy at the Injury Care Center, underwent bilateral sacroiliac joint injections and TENS[2] treatment, as well as EMG and MRI testing for back and neck pain. Overall, Giko has had more than 35 treatment visits. *See* N.T. Trial, 12/20/21, at 160-65.[3] Giko incurred medical bills in the amount of $26,069.01.

Following trial, the jury made the following findings: **Calgiano was negligent**; **Calgiano's negligence was a factual cause of Giko's injuries**; Giko was negligent; and Giko's negligence was a factual cause in

---

[2] Transcutaneous electrical nerve stimulation (TENS) therapy involves the use of low-voltage electric currents to treat pain. https://my.clevelandclinic.org/health/treatments/15840-transcutaneous-electrical-nerve-stimulation-tens (last visited 3/10/23).

[3] Approximately two years after the 2018 vehicle accident, Giko, along with her fiancé and two others, was injured in a second rear-end collision.

bringing about harm to herself. Jury Verdict Sheet, 12/21/21. The jury apportioned the parties' negligence as follows: Calgiano— 75%, and Giko— 25%. *Id.* at 5.[4] Damages were broken down into six categories, as follows: (1) Past Medical Expenses; (2) Future Medical Bills; (3) Past Pain/Suffering; (4) Future Pain/Suffering; (5) Past Loss of Ability to Enjoy Life's Pleasures; and (6) Future Loss of Ability to Enjoy Life's Pleasures. *Id.* at 6. For each category, the jury entered a "zero," for a total of zero damages. *Id.*

After entry of the verdict, Giko filed a motion for post-trial relief on December 29, 2021. Calgiano filed a response to the motion and, on April 5, 2022, the trial court denied the post-trial motion. On April 7, 2022, Giko filed a praecipe for entry of judgment and, on April 19, 2022, filed a timely notice of appeal. Judgment was entered on April 20, 2022.[5] Both Giko and the trial court have complied with Pa.R.A.P. 1925. Giko raises one issue for our review:

> Did the trial court commit error and abuse its discretion when it denied Giko's motion for post-trial relief to vacate the verdict that found negligence and factual cause against Calgiano, but did not award Giko a single dollar [for] medical bills or for her pain and suffering, where no reasonable finder of fact could determine that

---

[4] Calgiano testified that he was behind Giko's vehicle for approximately five to six minutes, "before [she] finally started to move her car. When she released her foot from the brake" he started to move forward. *See* N.T. Trial, 12/21/21, at 10-11. Calgiano stated he looked to the left to make sure traffic was clear, when he "made impact with [Giko's] vehicle." *Id.* at 12. Giko testified that she never moved her vehicle, and that Calgiano simply struck her vehicle in the rear. *See* N.T. Trial, 12/20/21, at 83-34.

[5] *See* Pa.R.A.P. 905(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

Calgiano was negligent and caused Giko to be injured but that she was entitled to zero dollars to compensate her for medical bills in excess of $26,000.00 or for her pain and suffering?

Appellant's Brief, at 5 (reworded).

Our standard of review [of an order] denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion. A new trial will be granted on the grounds that the verdict is against the weight of the evidence where the verdict is so contrary to the evidence it shocks one's sense of justice.

*Campagna v. Rogan*, 829 A.2d 322, 328 (Pa. Super. 2003) (citations omitted). A jury award should be set aside as inadequate "when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." *Womack v. Crowley*, 877 A.2d 1279, 1283 (Pa. Super. 2005) (citations omitted).

Here, the jury determined that Calgiano's negligence had caused harm to Giko, and the uncontradicted evidence established Giko incurred over $26,000.00 in medical bills. We conclude, therefore, that the jury's finding that Giko's harm was not compensable, was against the weight of the evidence. An award of zero damages in this case bears no reasonable relation to the loss suffered. *Womack*, *supra*. *See also Zeigler v. Detweiler*, 835 A.2d 764, 768-69 (Pa. Super. 2003) (en banc) (concluding trial court did not err in granting new trial on issue of damages where evidence demonstrated plaintiff experienced pain and suffering due to car accident); *Marsh v.*

***Hanley***, 856 A.2d 138, 139-40 (Pa. Super. 2004) (concluding trial court erred in denying motion for new trial where evidence demonstrated plaintiff should have been awarded damages for pain and suffering, as well as damages for lost wages where plaintiff suffered compensable injuries).

As a general proposition, victims must be compensated for all that they suffer from the tort of another. ***Boggavarapu v. Ponist***, 542 A.2d 516, 518 (Pa. 1988) (citing ***Spangler v. Helm's New York–Pittsburgh Motor Exp.***, 153 A.2d 490 (Pa. 1959)). We recognize, however, that not every injury results in compensable pain. ***Boggavarapu, supra***. ***See also Davis v. Mullen***, 773 A.2d 764 (Pa. 2001) (jury verdict awarding plaintiff medical expenses, but no compensation for pain and suffering, can be upheld where trial court had reasonable basis to find jury did not believe plaintiff suffered any pain and suffering, or preexisting condition injury was sole cause of alleged pain and suffering).

In ***Boggavarapu***, plaintiff was bitten by his neighbor's dog. Plaintiff claimed that the tetanus shot administered in the hospital after the bite pierced his sciatic nerve. It was uncontested that the plaintiff had been bitten; however, the extent of the injury to the sciatic nerve was disputed. The jury awarded plaintiff $42.60 in damages, solely for the cost of emergency room treatment, thereby excluding damages for loss of consortium and pain and suffering resulting from the pierced sciatic nerve. The trial court determined that the injury dictated the award of some compensation, and the court ordered a new trial. Our Supreme Court reversed, noting that the plaintiff's

complaints were the product of the tetanus needle, not the dog bite itself, and held that not all pain is compensable. *Id.* at 518-19. The *Boggavarapu* Court stated:

> [T]here are injuries to which human experience teaches there is accompanying pain. Those injuries are obvious in the most ordinary sense: the broken bone, the stretched muscle, twist of the skeletal system, injury to a nerve, organ[,] or their function, and all the consequences of any injuries traceable by medical science and common experience as sources of pain and suffering. . . . Pain may be subjective, and[,] if believed[,] is compensable. If the pain, however, has no known medical source and is subjective to the person, the triers of fact must believe and accept that it could and in fact exists. They are not to be faulted, however if they do not believe all they are told and all that their common experience does not accept. That is not to say, they may disregard obvious injury. It is, however, to say that they are not obliged to believe that every injury causes pain or the pain alleged.

*Id.* at 518 (citations omitted).

Thus, a jury may decline an award of compensation for pain and suffering if it determines that the discomfort suffered by the plaintiff was the sort of "transient rub of life" for which compensation is not warranted. *Majczyk v. Oesch*, 789 A.2d 717, 726 (Pa. Super. 2001), quoting *Boggavarapu*, *supra* at 518. *See Davis*, *supra*. That, however, is not the case here.

The jury clearly found Giko was injured as a result of Calgiano's negligence, albeit attributing 25% of negligence to Giko, and the uncontradicted evidence established that Giko underwent various treatments and therapies for approximately seven months, incurring over $26,000.00 in

medical expenses. Although we need not expound upon the evidence presented at trial since the jury did find Giko suffered injury as a result of Calgiano's negligence, we briefly summarize the expert medical testimony, and Giko's testimony, as follows:

Nerav K. Shah, M.D., a neurological surgeon,[6] testified that, within a reasonable degree of medical certainty, Giko sustained disc protrusions at C4/C5 and C5/C6, cervicalgia, cervical radiculopathy, L4/L5 and L5/S1 disc protrusions, and lumbar radiculopathy as a result of the 2018 accident. N.T. Trial, 12/20/21, at 166-68. He testified this was "confirmed by EMG." *Id.* at 168. Doctor Shah also reviewed Giko's medical bills pertaining to the 2018 accident, which included bills for laboratory tests, MRI images, treatment at the Injury Care Center, prescriptions, and a heating device, amounting to $26,069.01, and he opined that these were "reasonable and necessary" for her treatment. *Id.* at 175-78.

Andrew Shaer, M.D., a radiologist/neuroradiologist, testified as an expert for the defense. Doctor Shaer opined that the imaging evidence did not show injury from the 2018 accident. *Id.* at 260-65. Doctor Shaer acknowledged, however, that he never examined Giko, never consulted with her treating doctors or therapists, and never reviewed Giko's Injury Care Center records, physical therapy records, or injection records. *Id.* at 276-77.

---

[6] Doctor Shah testified that he attended Jefferson Medical College in Philadelphia and completed a six-year residency training at the University of Maryland. N.T. Trial, 12/20/21, at 152-53. He is board certified in neurological surgery. *Id.* at 152.

Lucas Margolies, M.D., a neurologist, also testified as an expert for the defense. Doctor Margolies stated that he reviewed Dr. Shah's report, the Urgent Care and Injury Care Center records, and the MRI and EMG reports, and, in his opinion, Giko did not suffer either lumbar or cervical radiculopathy as a result of the accident. N.T. Trial, 12/21/21, at 46-47. Doctor Margolies acknowledged, however, that Giko may have suffered injuries as a result of the accident, that two to four months of treatment may have been reasonable to treat for those injuries, and that physical therapy would be appropriate treatment for those type of injuries. *Id.* at 80-81. *See also id.* at 72 (Doctor Margolies acknowledging on direct examination that Giko may have had a sprain, "and if she did have a sprain, two to four months treatment would be reasonable"). Doctor Margolies testified that he did examine Giko; however, that examination took placed in October 2019, over one year after the accident. *Id.* at 37.

Additionally, Giko testified that the accident occurred while she was stopped at a stop sign, and that although she did go to work, she felt pain in her neck and back later that day and was instructed to go to Urgent Care. N.T. Trial, *supra* at 60-62. Thereafter, she treated at the Injury Care Center, undergoing injections in her neck, back and shoulders, and she then continued with physical therapy. *Id.* at 62-63. Giko also testified that she was prescribed medications for muscle spasms, and that while her "neck pain improved a lot," she continues to suffer back pain. *Id.* at 65. Giko stated that her back pain inhibits her daily activities, particularly cleaning, and

inhibits her activities with her two young children, ages 6 and 12. *Id.* at 68-69. Giko testified that she relies on her parents and her oldest child to help her with daily activities. *Id.* at 69-71.

The jury found Calgiano's negligence was a factual cause in bringing about the harm to Giko. The uncontradicted evidence established that Giko underwent treatment and physical therapy from late September 2018 to March 2019, incurring medical bills amounting to over $26,000. The jury's decision to find that Giko was harmed by Calgiano's negligence, but to award zero damages, bears no rational relationship to the evidence produced at trial as to the loss suffered by Giko. *Womack*, *supra*. Giko's injuries were not so insignificant or transient that one could reasonably conclude that no compensation was required. Back, neck, and shoulder pain, lasting at a minimum seven months and requiring multiple injections and physical therapy treatments, are not the type of "rub of life" injuries for which the jury is free to award no damages. *See Neison v. Hines*, 53 A.2d 634 (Pa. 1995) (new trial is appropriately ordered where plaintiff suffers injuries greater than "transient rub of life" and jury awards no damages); *Burnhauser v. Bumberger*, 745 A.2d 1256, 1261 (Pa. Super. 2000) (finding award of no damages for pain and suffering where opposing experts agreed victim suffered soft tissue injuries that would require up to six months to resolve was against the weight of evidence). In sum, a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the

uncontested evidence as to defy common sense and logic. ***Van Kirk v. O'Toole***, 857 A.2d 183, 185 (Pa. Super. 2004).

In light of the foregoing, we conclude that the jury's award of zero damages is against the weight of the evidence. ***Womack***, ***supra***. Accordingly, we reverse and remand for a new trial on damages. ***Nykiel v. Hey***l, 838 A.2d 808, 812 (Pa. Super. 2003) (new trial limited to issue of damages will be granted where: (1) issue of damages is not intertwined with issue of liability, and (2) issue of liability has been fairly determined).

Judgment reversed. Case remanded for new trial on damages only. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/29/2023</u>