# Holmes[1] v. University of Pennsylvania Health System

1. Darryl Holmes was also a plaintiff in this matter but died prior to trial. No estate was raised on his behalf.

C.P. of Philadelphia County, June Term 2004, no. 0349.

*James R. Radmore,* for appellant.
*Michael J. Burns,* for appellees.

QUIÑONES ALEJANDRO, *J.,* March 28, 2007—

## INTRODUCTION

On June 8, 2004, Yvette Holmes (plaintiff) filed a civil action against the University of Pennsylvania Health System, the Trustees of the University of Pennsylvania, Carmen Williams M.D., Beth W. Rackow M.D., Premal Thaker M.D., Peter Craig M.D., Linda Chen M.D., and Angelina Castor M.D.,[2] (collectively, defendants) averring claims of professional liability arising from a hysterectomy performed on June 14, 2002, to address a painful endometriosis condition. The jury found in favor of defendants.

---

2. On May 24, 2006, the Honorable Annette Rizzo granted a motion for summary judgment and dismissed, with prejudice, Peter Craig M.D., Linda Chen M.D., and Angelina Castor M.D., as party defendants.

In this appeal, plaintiff essentially argues that this trial judge erred in precluding the use of a Social Security disability award as proof of her claim; in not charging on the vicarious liability of defendant University of Pennsylvania Health System (UPHS); and in failing to include defendant UPHS on the verdict sheet. This trial judge disagrees.

## SUMMARY OF THE FACTS AND THE PROCEDURAL HISTORY

As background information, on October 6, 2006, a jury was selected to decide this matter. The presentation of trial testimony was scheduled to begin on October 9, 2006. Prior to the commencement of the trial testimony, numerous motions in limine were argued and decided, including, inter alia, plaintiff's motion expounding that defendants were collaterally estopped from re-litigating a decision rendered by a Social Security Administrative Law Judge which found that plaintiff was entitled to Social Security disability benefits as of June 14, 2002 (coincidently, the date of her hysterectomy). This trial judge denied said motion.

From the trial testimony subsequently elicited, it is reasonable to infer that the jury considered the following evidence:

"As background medical information, plaintiff testified that starting around the age of 14, she complained of chronic problems with ovarian cysts, endometriosis, and pelvic inflammatory disease.[3] She described these conditions as very painful for which she was prescribed Percocet.[4]

---

3. N.T. 10/11/2006, 42:22-44:12.
4. *Id.* at 44:17-45:12.

"Sometime in the 1990s, plaintiff was involved in a motor vehicle accident[5] which caused her to suffer chronic back pain during the period of 1994 through 2001.[6]

"Defendant highlighted and plaintiff acknowledged three instances when plaintiff was treated for complaints affecting her left leg prior to her hysterectomy; to wit: (1) in May 1994, plaintiff was diagnosed with a back strain and prescribed Flexeril[7] following complaints of a constant aching pain of three weeks duration in the left side of her back which radiated down into her left knee and caused numbness; (2) in July 1994, she was treated for complaints of a slight tingling in the back of her left calf;[8] and (3) in April 1998, she was examined in the emergency room for complaints of pain of 10 days duration in the pelvic area against the spine and lower back which radiated into the left leg and hip.[9]

"As to her painful endometriosis, plaintiff testified that she had undergone numerous unsuccessful laparoscopic procedures. In April 2002, plaintiff decided to undergo a hysterectomy as the 'last option' to deal with her pain.[10] The procedure was performed on June 14, 2002, by defendant doctors Williams, Thacker, and Rackow, at defendant Hospital of the University of Pennsylvania.[11]

"Plaintiff testified that when she awakened from the procedure, she experienced excruciating pain in the areas of her back, groin, stomach, and left side radiating down

---

5. N.T. 10/11/2006, 10:19-21.
6. N.T. 10/12/2006, 166:2-167:18.
7. N.T. 10/11/2006, 29:16-24.
8. *Id.* at 31:22-33:7.
9. *Id.* at 34:10-20.
10. *Id.* at 47:18-23.
11. N.T. 10/10/2006, 61:19-22, 63:18-22.

to her feet,[12] and immediately knew that she could not move her left leg,[13] nor walk. Plaintiff emphasized that from the time of the surgery until her first follow-up visit a month later, she was barely walking.[14] Subsequently, plaintiff's condition progressively deteriorated, requiring first the use of a leg brace, then a walker, a scooter, and ultimately a wheelchair. Plaintiff stated that she needs a shower bench due to an inability to walk normally; and diapers and a bedside toilet chair due to a lack of bladder control.[15] To assist her, a nurse comes to her home every day for eight hours and helps with meals, laundry, medication, dressing, bathing, and getting into and out of bed.[16]

"Plaintiff's medical and physical conditions following the surgery were described differently in the medical records and by defendant—physicians' testimonies. For example, the medical chart reveals that: (1) on June 16, 2002, Dr. Thacker noted that plaintiff was ambulating without assistance;[17] (2) later that day, Dr. Williams noted that plaintiff was out of bed without assistance and voiding freely;[18] (3) on June 17, 2002, Dr. Rackow noted that plaintiff was ambulating without assistance and had a normal gait;[19] and (4) the discharge summary dated June 18, 2002, and signed by plaintiff, noted that she was fully ambulatory, and left the hospital walking.[20]

---

12. N.T. 10/11/2006, 56:8-15.

13. *Id.* at 57:6-12.

14. *Id.* at 57:22-24, 58:5-8.

15. *Id.* at 20:20-28:21.

16. *Id.* at 27:23-28:8.

17. N.T. 10/11/2006, 68:11-69:11.

18. *Id.* at 70:4-15.

19. *Id.* at 71:12-24.

20. N.T. 10/12/2006, 84:22-85:23.

Dr. Williams also testified that had plaintiff been unable to walk at any time during her post-operative hospital stay, '[i]t would have been noted by multiple people. And there would have been an entire work-up to figure out why and how we could help her.'[21]

"When confronted with this contradictory evidence on cross-examination, plaintiff testified that she believed that there was some sort of conspiracy with the hospital personnel, stating those notations were false, the testimony was lies, that 'they have a job to perform and they write down what's being asked of them to write down,' and that after her surgery, she had difficulty obtaining her record because '[i]t was always a lawyer had them.'"[22]

On October 13, 2006, the jury returned a verdict in favor of defendants.

On October 23, 2006, plaintiff filed a post-trial motion. Defendants filed a response, and on January 10, 2007, oral argument on these pleadings was heard. On January 16, 2007 this trial judge denied plaintiff's motion for a new trial.

Dissatisfied, on January 23, 2007, plaintiff filed this appeal.

## ISSUES

In response to an order issued on February 1, 2007, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b), plaintiff on February 7, 2007, filed of record and served onto this trial judge the following

---

21. *Id.* at 237:2-9.

22. N.T. 10/11/2006, 66:11-20, 69:6-11, 70:11-20, 71:10-24; N.T. 10/12/2006, 80:11-24, 81:10-22.

verbatim statement of matters complained of on appeal, averring:

"(1) The lower court erred in denying the motion for a new trial when it refused to permit plaintiff to cross-examine defendant's medical expert as to the findings of a Social Security Administration Administrative Law Judge that plaintiff was entitled to a period of disability beginning on June 14, 2002, the date of the surgery involved in this litigation.

"(2) The lower court erred in denying the motion for a new trial when it refused to include University of Pennsylvania Health System, a named defendant, on the verdict sheet where said defendant remained a party to the action and had not been removed in any pretrial proceeding nor had there been a motion for a directed verdict in favor of said defendant during the trial.

"(3) The lower court erred in denying the motion for a new trial when it refused to charge the jury on whether defendant University of Pennsylvania Health System should be held vicariously liable for the acts of his employees.

"(4) The lower court erred in denying the motion for a new trial when its charge to the jury inadequate [sic] by failing to include the issue of vicarious liability to the prejudice of plaintiff."

## LAW AND DISCUSSION

As stated, plaintiff claims that this trial judge erred when precluding certain evidence, instructing the jury, and denying her post-trial motion on those allegations. The standard of review of a ruling on a post-trial motion requesting a new trial is well-settled. The decision to

grant or deny a request for a new trial is within the sound discretion of the trial court. *Andrews v. Jackson,* 800 A.2d 959, 961 (Pa. Super. 2002), *appeal denied,* 572 Pa. 694, 813 A.2d 835 (2002). An appellate court may not disturb a trial court's ruling unless the trial court palpably abused its discretion or committed an error of law. *Neison v. Hines,* 539 Pa. 516, 520, 653 A.2d 634, 636 (1995); *Andrews,* 800 A.2d at 961. An abuse of discretion is not merely an error of judgment. Discretion is abused if, in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will. See *Fanning v. Davne,* 795 A.2d 388, 393 (Pa. Super. 2002), citing, *Paden v. Baker Concrete Construction Co. Inc.,* 540 Pa. 409, 412, 658 A.2d 341, 343 (1995). However, an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion. The court's action requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill will, or such lack of support as to be clearly erroneous. *Fanning,* 795 A.2d at 393.

When deciding to grant or deny a post-trial motion for a new trial, the trial court must engage in a two-part analysis: (1) whether a mistake occurred at trial; and (2) whether the mistake was prejudicial to the moving party. *Slappo v. J's Development Associates Inc.,* 791 A.2d 409, 414 (Pa. Super. 2002). A new trial is warranted where the jury's verdict is so contrary to the evidence as to shock one's sense of justice. *Neison,* 539 Pa. at 520, 653 A.2d at 636. However, a new trial should not be granted merely because of a conflict in testimony or some irregularity which occurred during trial or because the trial judge, on the same facts, would have arrived at a

different conclusion. *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 467, 756 A.2d 1116, 1122 (2000). The moving party must demonstrate to have suffered prejudice from the mistake. *Id.* at 467, 756 A.2d at 1122. (citations omitted)

Here, plaintiff initially argues that this trial judge erred in denying her motion in limine and, thereby, precluding the use of her Social Security disability benefit award as proof of defendants' negligence and her damages, and/or precluding its use for impeachment and cross-examination of defendants' medical experts. Plaintiff contends that an administrative law judge from the Social Security Administration found her disabled and entitled to a period of disability commencing on June 14, 2002, the date of the alleged malpractice. Plaintiff further contends that this administrative decision is proof of defendants' negligence. Plaintiff is mistaken. This administrative determination is not at issue in this matter. What is at issue is whether defendants' were negligent in the care rendered to plaintiff at the time of her hysterectomy.

In denying plaintiff's motion in limine, this trial judge relied, in part, on *Frederick v. Action Tire Co.,* 744 A.2d 762, 766 (Pa. Super. 1999), which holds that a Social Security ruling is not preclusive as to disability status in a negligent action, and that collateral estoppel is only applicable when: "An issue decided in a prior action is identical to one presented in a later action; [t]he prior action resulted in a final judgment on the merits; [t]he party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and [t]he party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action." See also, *Rue v.*

*K-Mart Corporation,* 552 Pa. 13, 16, 713 A.2d 82, 84 (1998).

Administrative Law Judge Irving A. Pianin's decision clearly indicates: "Although the claimant's ability to ambulate effectively has deteriorated since her surgery in June 2002, *there is no specific determination of etiology causing* the significant pain and weakness experienced by the claimant subsequent to her hysterectomy . . . ." (This trial judge's emphasis.) Since the issue of the causation of plaintiff's disability was not before the administrative law judge, nor were defendants part[ies] in the Social Security matter, nor did they have the opportunity to litigate any aspect of plaintiff's Social Security claim, this trial judge opines that defendants were not estopped from defending themselves in this malpractice action. Clearly, the issues at the administrative hearing and the issues at trial were very different, and required different burdens of proof. The administrative decision, which found plaintiff disabled from substantial gainful activity, did not determine the source or cause of her disability. At trial, the jury was asked to determine whether defendants were (individually or collectively) negligent in their care of plaintiff and, if so, whether their negligence was a factual cause of her alleged injuries, issues not before the administrative law judge. This trial judge opines that the motion in limine was properly denied.

Plaintiff contends, however, that defendants' experts, Larry James Copeland M.D. and Terry Heiman-Patterson M.D., both testified on direct examination that they reviewed plaintiff's Social Security records as part of their assessment of the documents submitted to them and, therefore, this opened the door for the use of the Social

Security record and the administrative law judge's findings. In addition, plaintiff contends that Dr. Heiman-Patterson also testified incorrectly on cross-examination that plaintiff had been denied Social Security benefits. Plaintiff argues that because of these statements, plaintiff should have been allowed to cross-examine Dr. Heiman-Patterson using the Social Security records, including the disability award.

A careful review of the trial transcript reveals that defendants presented Dr. Copeland as their expert obstetrician gynecologist. Dr. Copeland was asked on direct-examination to briefly list the materials reviewed prior to preparing his report. In response, Dr. Copeland listed the records reviewed, which included plaintiff's Social Security records. On cross-examination, plaintiff's counsel did not ask him any questions on this topic nor did counsel preserve any specific issue regarding Dr. Copeland's testimony as it relates to the Social Security benefits received. Under these circumstances, plaintiff waived this issue for appellate review as to Dr. Copeland. See *Harman ex rel. Harman v. Borah,* 756 A.2d 1116 (Pa. Super. 2000), holding that a party waives an issue concerning perceived trial court error if the party fails to preserve the issue with a timely and specific objection at trial.

As to the testimony of Dr. Heiman-Patterson, defendants' neurology expert, on direct examination Dr. Heiman-Patterson was also asked to briefly identify the materials reviewed prior to issuing her report. Dr. Heiman-Patterson simply stated that the Social Security records were within the materials reviewed.[23] Dr. Hei-

---

23. N.T. 10/12/2006, 157:12-158:3.

man-Patterson did not reference the administrative law judge's findings, nor did she offer any testimony and/or opinion regarding whether plaintiff met the standards of "disability" or when any "disability" may have arisen for the purpose of Social Security benefits.

In response to a question posed during cross-examination, Dr. Heiman-Patterson testified that she believed the benefits had been denied. Despite this trial judge's ruling on the motion in limine, counsel for plaintiff attempted (on several occasions) to introduce evidence of the Social Security disability award in an attempt to establish her claim against defendants. An excerpt of the trial transcript reveals the following:[24]

"Q. What parts—you commented on the Social Security records. What part of the Social Security records did you review?

"A. There were some disability records, some submissions. It was one of the denials. I don't have those with me.

"Q. You reviewed the denials. Did you review the findings by the administrative law judge—

"Mr. Lynch. Objection. Your honor. May we be heard at sidebar?

"The Court. Objection sustained. We are not going into that."

Plaintiff further argues that she should have been permitted to question Dr. Heiman-Patterson regarding the doctor's statement that Social Security benefits had been denied, since the jury was left with the impression that plaintiff's injuries were not serious enough to qualify for disability benefits and, therefore, this trial judge com-

24. N.T. 10/12/2006, 206:25-209:6.

mitted a reversible error. Plaintiff relies on *Boucher v. Pennsylvania Hospital,* 831 A.2d 623 (Pa. Super. 2003), wherein the appellate court held that an expert may express an opinion which is based on material not in evidence, including other expert opinions, where such material is of a type customarily relied on by experts in his or her profession. Plaintiff notes that under *Primavera v. Celotex Corp.,* 415 Pa. Super. 41, 51, 608 A.2d 515, 520 (1992), such hearsay is admissible because the expert's reliance on the material provides its own indication of the material's trustworthiness.

Plaintiff, however, loses sight of the fact that Dr. Heiman-Patterson did not state that she had relied upon the administrative law judge's ruling to form her opinion. Neither did she give any specific testimony referring to the administrative law judge's decision. It was counsel who raised the subject matter to the expert doctor and reiterated the denial of benefits. The record supports this trial judge's belief that plaintiff's line of questioning was an attempt to circumvent this trial judge's ruling on the motion in limine. No one doubts that an administrative law judge found plaintiff disabled from engaging in substantial gainful activity. However, that finding is not relevant to the issue of whether defendants were negligent during the hysterectomy; that is, whether defendants breached the standard of care and whether that breach was a factual cause of plaintiff's injuries. This administrative finding is not something that a neurologist would generally rely on to determine whether medical negligence occurred. This trial judge opines that no error was committed in denying the motion in limine and when ruling on subsequent objections which dealt with the subject matter of said motion.

Next, plaintiff argues that this trial judge erred in refusing to include defendant University of Pennsylvania Health System (UPHS) on the verdict sheet and in refusing to charge the jury on the vicarious liability of defendant UPHS for the alleged negligent acts of its employees. Plaintiff states numerous reasons why this trial judge erred and contends that these constituted reversible errors.

As to the issue of vicarious liability per se, it first arose during the charging conference when the charge was requested. The charging conference occurred outside the presence of the jury prior to the conclusion of the presentation of all the trial testimony. Plaintiff had previously asserted that defendant UPHS was defendant-physicians' employer. Defendant-physicians denied this allegation and asserted that their employer was defendant Trustees of the University of Pennsylvania.[25] After hearing argument for and against the inclusion of the charge, this trial judge held the issue under advisement. Relevant to this discussion is the following excerpt of the transcript:[26]

"The Court: Well, I thought, again, that there was an agreement that if any of the defendant physicians are found liable, then it's understood that the University of Pennsylvania Health System will be liable. That's agreed.

"Mr. Lynch: That's correct, your honor. We will stipulate to the correct employer, whether it's the Trust-

---

25. See defendants' answer to plaintiff's third amended complaint, paragraph 10.

26. N.T. 10/13/2006, 9:2-11:19.

ees of the University of Pennsylvania or the UPS [sic] Health System, whoever that will need to be for legal purposes, we'll stipulate to that. Then the court could mold the verdict accordingly.

"The Court: I don't really think in this case it's important to charge the jury on vicarious liability. Tell me why you think it's important.

"Mr. Radmore: Because I'm concerned the jury will have empathy for the individual doctors if they don't understand that whatever—if there's any compensation it gets paid by the hospital, not by the doctors. And that's what my concern is.

"The Court: I have never thought that, at least the jurors in my courtroom, are overly sympathetic to doctors. If they believe there was negligence, my jurors have never hesitated to find it against doctors. But if you feel that is important for your case, then I will charge that—but it's not only—

"Mr. Radmore: It's all of them, correct. As far as the—I may, at the end of their testimony, agree to let the residents out. I'm not sure what they're going to testify to because, you know, the attending is responsible for what they do anyway. That's why I just put that in. But if I don't, then I would like each one.

"Mr. Lynch: Your honor, my position is that Mr. Radmore is not quite correct when he talks about the money coming from the institution not the doctor. Obviously, we're not talking necessarily ab[o]ut personal liability here, although that's a conceivable possibility in the end. But the insurance policies involved here are both the individual physician, at least in Dr. Williams' case, as well as the institution. To say that really he needs to have the jury charged on the institutions in order to take the

light off of where the money is coming from is not quite accurate. Finally, your honor, I think that charging on vicarious liability myself confuse[s] the jury where they're not going to be asked in the questionnaire, for good and sufficient reasons. I don't think there's any necessity for vicarious liability. We're essentially conceding that if there's a verdict against one of the physicians, that it can be molded to include the institution involved as the employer on the basis of vicarious liability.

"The Court: I'll hold this under advisement. I'll think about it. My inclination is not to charge. But I'm thinking about it, just to let you know.

"Mr. Radmore: Okay, your honor."

As to the trial testimony, none of the defendant-physicians were asked nor did they offer testimony as to the identity of their employer at the time of the incident. A review of the trial transcripts reveals that vague references were made to defendant UPHS, and even less references were made of defendant Trustees of the University of Pennsylvania. None of these vague references dealt with the employer-employee relationship of defendant-physicians and the institutions. There is no testimony establishing which entity is the proper employer. Under the circumstances, as plaintiff failed to present evidence as to the identity of the proper employer, the charge of vicarious liability was properly excluded from the jury charge.

Notwithstanding this factual omission, defendant-physicians were willing to stipulate that *if* they were found to be negligent and said negligence was a factual/substantial cause of the injury suffered, their employer would be vicariously liable for their conduct, and this trial judge would mold the verdict to include a judgment

against the employer on the basis of vicarious liability. Plaintiff refused this stipulation.

Prior to charging the jury, this trial judge noted, outside of the presence of the jury: "For the completion of the record, I am not charging vicarious liability. I think that was the only one I had under advisement."[27] Plaintiff did not voice any objections to this ruling at *any* time, despite having been provided with an opportunity to do so prior to the jury being excused to deliberate.[28] See Pa.R.C.P. 227(b), which provides that all exceptions to the charge of the jury shall be taken before the jury retires. *Brown v. Philadelphia Tribune Co.,* 447 Pa. Super. 52, 668 A.2d 159 (1995), which held that the failure of trial counsel to specifically object to jury instruction waived issue on review. Counsel for the parties responded on the record that there was no need for a sidebar. Consequently, it is this trial judge's opinion that plaintiff has waived this issue for appellate review.

In plaintiff's other argument of error by this trial judge, plaintiff relies on the holding of *Herbert v. Parkview Hospital,* 854 A.2d 1285 (Pa. Super. 2004), to contend that this trial judge erred in not including Standard Jury Instruction 4:02, vicarious liability, as a jury charge. Plaintiff's reliance is misplaced. The matter of *Herbert* concerns corporate negligence, an independent cause of action or basis for finding of liability against a hospital which was not pled by plaintiff.

Nonetheless, plaintiff contends that not charging on vicarious liability caused the deliberations to be incomplete, and the jury to be confused as evidenced by the question submitted during deliberation inquiring which

27. N.T. 10/13/2006, 177:13-16.
28. *Id.* at 214:13-16.

doctor performed which task in the surgery. It appears that plaintiff interpreted the jury's inquiry to mean that *had* the jury received an instruction on vicarious liability and *had* defendant UPHS been included on the verdict slip, "this would likely have not been a concern," as "[w]hatever the specific task may have been for a particular physician would not have been as important because the ultimate liability would be of U of P."[29] This convoluted argument seems to suggest that if the jury had known that defendant-physicians' employers would be the one responsible or liable for the negligence of defendant-physician(s), the jury would not have been interested in nor cared about the culpability of the individual physician nor, perhaps, of the question of whether there was negligence on the part of any of the defendant-physicians. This argument lacks merit.

Assuming arguendo that this trial judge's jury instructions were in error, a new trial will be awarded only where the jury instruction might have prejudiced the appellant. *Lilley v. Johns-Manville Corp.,* 408 Pa. Super. 83, 95, 596 A.2d 203, 209 (1991). If the jury had found any of the individual defendants to be liable, the verdict would have been molded against the employer as well, by agreement. As the jury found no liability against any individual defendants, no liability could have been entered against the employer and, therefore, there is no prejudice. Even had defendant UPHS been on the verdict slip, defendant UPHS is only liable if an individual defendant-physician was negligent, and said negligence was a factual or substantial factor of the injury suffered. The

29. Brief of plaintiff in support of concise statement of matters complained of pursuant to Rule of Appellate Procedure 1925(b), section III, B.

jury found none of the defendant-physicians was negligent. Any error in not including the institution was, at most, a harmless error. Under the cited case law and analysis, a new trial is not warranted.

### CONCLUSION

Based on the foregoing discussion, this trial judge is of the opinion that no errors and/or abuses of discretion were committed. This trial judge respectfully requests that this appeal be dismissed; and that the order dated January 16, 2007, and the jury verdict be affirmed.