J-S31002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARK FRIEDMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM HUDSON | : | No. 1881 EDA 2021 |

Appeal from the Judgment Entered November 22, 2021
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2019-00890

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED MAY 16, 2023**

Mark Friedman appeals from the judgment entered on the non-jury verdict in favor of the defendant, William Hudson in a contract dispute concerning investment properties.  We reverse and remand with instructions.

Hudson is a contractor who owned investment property located at 439 Beech Street ("439 Beech Street") in Pottstown, Montgomery County.  While that property was not encumbered by a mortgage, Hudson owed an unsecured debt of $20,000 to a third party for property-related expenses.  On September 25, 2015, Hudson entered into a partnership agreement with Friedman, a work acquaintance with moderate construction experience as an

---

[*] Former Justice specially assigned to the Superior Court.

unskilled laborer. Hudson drafted the handwritten agreement ("the Partnership Agreement"), which provided as follows:

> 9/25/15
>
> William C. Hudson and Mark W. Friedman as of today will start a Properties Company.
>
> - William C. Hudson offers property 439 Beech St. Pottstown, Pa.
>
> - Mark W. Friedman offer[s $]25,000.00 which is to pay off loan, against said house.
>
> - Doing this Mark W. Friedman will be added to the title of said House and become half owner.
>
> I agree to this agreement.
>
> [Signatures of both parties]

N.T., 2/8/21, 17-18 Exhibit P-2. As the trial court accurately observed, "[t]he agreement does not contain an integration clause." Trial Court Opinion, 2/17/22, at 3.

The trial court continued,

> For his part, Friedman invested a total of $25,000.00 in the partnership and orally agreed to help Hudson with the repair and renovation of the properties in the partnership. For his part, Hudson offered up his unencumbered 439 Beech house with a purported market value of approximately $90,000.00 to $100,000.00 as collateral and orally agreed to bring his general contractor skills to repair and/or renovate the residential properties purchased by the partnership. Friedman agreed the condition of 439 Beech was "very good," it was "ready to go" and was "a nice house." He explained that he would not have invested his money in it if it were not.
>
> . . . .

- 2 -

According to Hudson, sometime following the signing of the written agreement, Friedman informed Hudson that he was concerned that adding his name to the title of 439 Beech would negatively affect Friedman's employment claim with Vanguard and that Friedman's bad credit would negatively affect the partnership's ability to get a loan. Consequently, the parties orally agreed that, although Friedman's name would not be added to the deed for 439 Beech, Friedman would continue to own 50% interest in the business. This amendment to the contract was not contained in any writing.

*Id*. at 3-5.

Hudson rented the property periodically between 2015 and 2019. He either reinvested the rental proceeds into repairs and renovations that he performed between tenants or used the money to satisfy property-related expenses such as insurance and property taxes. The parties dispute whether Friedman helped Hudson complete any repairs or manage the property.

On May 3, 2016, Hudson, acting on behalf of the partnership, used the property to secure a loan for $64,500, but he neglected to inform the mortgage lender that Friedman owned a fifty-percent interest in the real estate. Thereafter, Hudson and Friedman agreed to use approximately one-third of the loan proceeds to purchase a second investment property on Beech Street ("20 Beech Street"). However, a subsequent dispute concerning the postponed settlement date caused a rift between the two men so severe that the partners did not communicate for several months.

In October 2016, Friedman informed Hudson that he wanted the return of his $25,000 investment. Hudson agreed but, as he was unable to access cash to pay in a lump sum, proposed a series of $500 monthly payments to

satisfy the debt. Friedman rejected that proposal, but in the winter of 2016, he subsequently accepted two checks for a total of $6,000 and agreed to defer the remaining $19,000 debt until Hudson either sold or mortgaged the 20 Beech Street property.[1] The memo line on the first check read "Pay Back Payment" and the second check noted "Balance $19,000.00." N.T., 2/17/21, at 87, Exhibits D and E.

Over the ensuing two-year period, Hudson neither sold nor mortgaged the 20 Beech Street property, and he did not make any additional payments to Friedman. In January 2019, Friedman initiated the lawsuit that is the genesis of this appeal. He subsequently filed an amended complaint asserting: (1) that Hudson was in breach of the Partnership Agreement by failing to pay $42,606.31, which Friedman averred was his equal share of the alleged profits from the partnership; and (2) that Hudson was in breach of the 2016 repayment agreement because he failed to satisfy the remaining $19,000 debt. Friedman also presented a third, alternative count of unjust enrichment, *i.e.*, "Friedman conferred on Hudson the benefit of the estimated $42,606.31 in Partnership profits and the $19,000 in Partnership interest [and

---

[1] As we discuss *infra*, the parties and the trial court each presented overlapping characterizations of the 2016 agreement. Friedman's amended complaint portrayed the payment plan as Hudson's purchase of Friedman's ownership interest in the partnership. During trial, Hudson described it as a mutual rescission agreement that discharged the remaining obligations of either party, and following trial, both Hudson and the trial court characterized it as a novation, *i.e.*, a substitute agreement that replaced the original written contract.

u]der the circumstances, it would be inequitable and unjust for Hudson to retain the benefit of Friedman's money without paying for the value of that benefit." Amended Complaint, 12/27/19, at 6.

In his answer and new matter Hudson denied that the partnership realized any profit for the ventures at 20 Beech Street or 439 Beech Street. *See* Answer and New Matter Counterclaim, 2/18/20, at 4,5. As to the October 2016 agreement to pay Friedman $25,000, which he framed as a mutual rescission, Hudson asserted that Friedman breached that agreement by filing this lawsuit and demanding payment before Hudson was able to sell or mortgage 20 Beech Street.[2] *Id*. at 6. The concomitant counterclaim asserted that Friedman was in breach of the Partnership Agreement because Friedman failed to provide labor or any further capital for 439 Beech Street and utterly abandoned his responsibilities for renovating 20 Beech Street. He opined, "Friedman's breach[es] of the [Partnership Agreement] have caused Hudson to suffer loss in the amount of $75,000." *Id*. at 9.

During the bench trial, both parties proffered testimony that was generally consistent with their pleadings. Friedman stated that his only obligation under the Partnership Agreement was to contribute $25,000 to the venture. *See* N.T., 2/17/21, at 116. He believed that he was purchasing one-

_____

[2] While the litigation was pending, on July, 10, 2019, Hudson sold 20 Beech Street for $35,000, realizing net gain of $21,226.13. Thereafter, on October 18, 2019, he sold 439 Beech Street for $90,000, realizing net proceeds of $22,687.33.

half interest in the rental property and would receive rental income when it was occupied. *Id*. at 116. For his part, Hudson testified that, in October 2016, after the dispute regarding the settlement date for 20 Beech Street, Friedman informed him that he wanted to terminate the partnership. *Id*. at 83. Hudson recalled, "[H]e told me he wanted out. He did not want to be in this anymore. He changed his mind. He would like his money back." *Id*. Thereafter, Hudson outlined the two payments that he made to Friedman totaling $6,000, confirmed the $19,000 balance, and explained why he subsequently refused to pay the amount remaining on the debt. *Id*. 84-86, 87-88, 95. He reasoned:

> [W]hen I had that money to pay him back, . . . that's when we got the lawsuit that he wanted a ridiculous amount of money for his interest, and I then decided not to give him the $19,000 and we'll wait for what the court decides, if he wants to take it to court and not, you know, do what we had agreed.

*Id*. at 95.

At the close of testimony, the trial court held a non-record sidebar and then directed counsel to submit proposed findings of fact and conclusions of law. In pertinent part, Friedman's submission noted the $6,000 repayment but did not outline his position as to the remaining $19,000. Instead, he focused on recovering what he asserted were "the benefits of his ownership," *i.e.*, $57,602.52, which included interest on any unpaid profit. Plaintiff's Proposed Findings of Facts and Conclusions of Law, 2/18/21, at 8. As it relates to the $19,000 balance, Hudson reiterated his position that Friedman

breached the 2016 repayment agreement by initiating the instant lawsuit seeking additional damages. *See* Defendant's Proposed Findings of Fact and Conclusions of Law, 2/19/21, at 4-5.

On June 15, 2021, the trial court entered a self-styled "Decision" outlining defense verdicts against Friedman's breach of contract and unjust enrichment claims and Hudson's counterclaim for breach of contract. As to Friedman's request for substantial damages relating to the accruing benefits of ownership under the partnership agreement, the trial court found that the 2016 repayment agreement was "a novation of the partnership agreement . . . in which Friedman agreed to relinquish any stake in the partnership for the return of his original $25,000.00 investment." Trial Court Decision, 6/15/21, at 19. It found that "Friedman's consent to the novation [wa]s evidenced by his acceptance of $6,000 toward the agreed upon amount of $25,000.00[.]" *Id*. Hence, the court concluded that Friedman did not establish that Hudson breached the written contract: "The evidence adduced at trial demonstrates that the original written instrument documenting the partnership agreement was subsequently amended by valid oral agreements such that the original terms of the written instrument were no longer controlling." *Id* at 20. Presumably referencing that oral agreement, the court further concluded, without any explanation, that Friedman did not establish that Hudson breached "their" contract. *Id*. at 19.

Similarly, in rejecting Hudson's counterclaim, the ensuing trial court order stated: "Hudson failed to cite any statutory or case law in support of his bald claim for the repudiation of the balance of $19,000.00 due and owing to Plaintiff, Mark Friedman. Trial Court Order, 6/15/21, at 2. Nevertheless, despite finding the amount "due and owing to Plaintiff," the court did not enter a verdict in Friedman's favor. Instead, the court dismissed with prejudice both Friedman's amended complaint and Hudson's counterclaim. *Id*.

Thereafter, the trial court denied Friedman's timely motion for post-trial relief seeking, *inter alia*, the entry of a $19,000 judgment in his favor. In pertinent part, the court determined that, because Friedman failed to assert an alternative claim under the novation, "there is no merit to Friedman's argument that the [c]ourt should have awarded $19,000 to Friedman under the novation." Order, 8/9/21, at 4. The court continued: "This court may award judgment only on a claim advanced at trial, in this case, under a novation which, in fact, Friedman disputed at trial and in post-trial filings." *Id*. at 4. Moreover, the trial court revised the June 15, 2021 order to state in the past tense "had been due and owing" when referencing the $19,000 balance that it continued to deny Friedman. *Id*.

Friedman timely filed this appeal[3] and both he and the trial court complied with Pa.R.A.P. 1925. Friedman presents one issue for our review: "The trial court erred in concluding that Friedman is not entitled to a minimum of $ 19,000.00 as damages for Hudson's breach of the novation of the Partnership Agreement, which novation Hudson advanced as his defense and which the court found to be valid and enforceable." Friedman's brief at 7 (cleaned up).

We review a non-jury verdict to verify that the decision was rendered on competent evidence and with the correct application of the law. *See Yablonski v. Keevican Weiss Bauerle & Hirsch LLC*, 197 A.3d 1234, 1238 (Pa. Super. 2018). "For discretionary questions, we review for an abuse of that discretion. For pure questions of law, our review is *de novo*." *Affordable Outdoor, LLC v. Tri-Outdoor, Inc.*, 210 A.3d 270, 280 (Pa.Super. 2019). Friedman's sole issue regarding the trial court's refusal to award the $19,000 balance after finding that it was "due and owing" raises a question of law. Hence our review is *de novo*. *See e.g. TruServ Corp. v. Morgan's Tool & Supply Co., Inc.*, 39 A.3d 253, 258 (Pa. 2012) (issue concerning whether

---

[3] Although Friedman purported to appeal from the trial court's August 9, 2021 order, an appeal is properly taken from the entry of judgment, which occurred on November 22, 2021. Thus, our jurisdiction is proper. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

trial court had discretion to refuse to award contractual interest to prevailing party presented a question of law which reviewed *de novo*).

In rejecting Friedman's request for relief, the trial court first determined that the deficiencies in Friedman's pleadings, trial memoranda, and requests for post-trial relief precluded him from collecting the undisputed debt owed to him by Hudson.[4]  In short, the court found that, notwithstanding the factual averments in the amended complaint, the evidence adduced at trial, or the claims raised in his post-trial motion, Friedman's entreaty failed because he neglected "to state in his post-sentence motion for reconsideration how the grounds were preserved in pre-trial proceedings or at trial."  Trial Court Opinion, 2/17/22, at 18.  Phrased differently, the court determined that "Friedman did not bring a claim under [the] novation, rather Friedman argued against the finding of a novation."  *Id*. at 18-19.  It concluded, "Friedman's election to seek damages under the [Partnership Agreement] precludes the relief he now seeks post trial."  *Id*. at 20.

---

[4]  Hudson asserts similar procedural errors based upon Friedman's alleged failure to: (1) assert the novation as a basis for relief during trial; (2) specify how the grounds for relief were asserted at trial; and (3) preserve the claim prior to the trial court's decision.  *See* Hudson's brief at 4-6.  As noted in the body of this memorandum, Friedman consistently argued that he was owed $19,000 under what he referred to as 2016 repayment agreement.  Moreover, the grounds for the instant allegation of trial court error did not exist until the trial court rendered its logically-inconsistent decision to deny relief notwithstanding its accompanying finding that the $19,000 had been due and owing to Friedman under the agreement.  Thus, we reject these claims of waiver.

For the following reasons, the trial court erred in finding that judgment was not warranted because Friedman proffered the incorrect legal theory to obtain it. First, the certified record supports the court's determination that Hudson owed the $19,000 to Friedman, and we can discern no error in the court's attendant rejection of Hudson's repudiation claim. In this vein, we also note that, to the extent that the trial court determined that Hudson did not breach the 2016 agreement, the certified record does not support that conclusion.

To prove breach of contract, Friedman was required to establish: (1) a contract; (2) Hudson's breach of a duty imposed by the contract; and (3) resultant damages. **Harley v. HealthSpark Found.**, 265 A.3d 674, 685 (Pa.Super. 2021). As delineated *supra*, the uncontested facts in the certified record bear out that Hudson agreed to repay Friedman the $25,000, and after Friedman rejected a proposed installment plan, Friedman accepted $6,000 toward the debt over the next two months, and eventually agreed that Hudson could repay the remaining amount after he sold or mortgaged the 20 Beech Street Property. Hudson sat idle for the ensuing three years in which he neither sold nor attempted to mortgage the property. Hudson eventually sold the property and continued to withhold the $19,000 balance of the debt, ostensibly because he believed Friedman repudiated the agreement by initiating the underlying lawsuit. **See** N.T., 2/17/21, at 95. Significantly, however, the court expressly rejected Hudson's repudiation defense. **See** Trial Court Order, 6/15/21, at 2; Trial Court Order, 8/9/21, at 4. Hence, the

- 11 -

certified record supports Friedman's breach of contract claim, *i.e.*, that Hudson was in breach of the 2016 repayment agreement because he failed to satisfy the remaining $19,000 debt. **See** Amended Complaint, 12/27/19, at 6. Therefore, the trial court erred in failing to grant the relief Friedman requested in his amended complaint and Hudson conceded at trial. **Accord**, **e.g.**, **Andrews v. Jackson**, 800 A.2d 959, 965 (Pa.Super. 2002) (holding fact finder is not permitted to refuse to award damages in tort action for uncontroverted injury).

Moreover, in refusing to award the breach-of-contract damages that Friedman clearly asserted in his amended complaint, the trial court overstated the impact of Friedman's legal argument challenging the novation during trial. The court's position is accurate insofar as Friedman disputed during trial that the novation relieved Hudson's obligation to pay Friedman his share of the partnership profits. Indeed, it was Hudson, not Friedman, who invoked the 2016 agreement as a defense to Friedman's breach of contract count concerning the partnership profits. Hudson first referred to the 2016 agreement as the "modification" or "rescission" of the written agreement and did not characterize it as a novation until in his post-trial submission. The trial court subsequently adopted that terminology in its June 15, 2021 decision, wherein it concluded that it replaced the Partnership Agreement.

As Friedman accurately observes in his brief, during the trial he argued against Hudson's characterization of the 2016 agreement because it was contrary to Friedman's argument that the Partnership Agreement continued

to exist, profits continued to accumulate, and that he was entitled to receive his share of the partnership profits up to the date that Hudson completed the purchase of Friedman's one-half ownership interest in the partnership. That is, Friedman argued that he continued to accrue damages under the Partnership Agreement until Hudson satisfied the remaining $19,000 owed under the buyout. Thus, Friedman did not invoke the novation because it was contrary to his position. Crucially, however, Friedman did consistently assert that the $19,000 balance of his initial contribution remained owing, even if he contended that he was **also** entitled to the partnership profits that he believed continued to accumulate under the Partnership Agreement.

It defies logic that, although Friedman pled a breach of the repayment agreement as a separate count for damages in the amended complaint, and the trial court found that he proved that claim at trial, he somehow abandoned it because it was not articulated in the proposed findings of fact and conclusions of law submitted to the trial court at the close of evidence. Basically, the trial court equated the post-hearing submissions in this case to the use in jury trials of a proposed special verdict slip, which "promotes judicial efficiency by preventing needless retrials as well as fairness by keeping a litigant from benefiting from its own omission in failing to request a special verdict slip." *Cowher v. Kodali*, 283 A.3d 794, 804 (Pa. 2022). However, the two are not the same.

As a threshold matter, a proposed special verdict slip is presented for the benefit of a jury and not a trial court acting as the ultimate arbiter of fact

in a bench trial. Moreover, unlike the above-stated purpose of a special verdict slip, the purpose of proposed findings of fact is to allow the court to determine which material facts are genuinely disputed. Significantly, one fact that was never disputed in this case is Hudson's failure to pay Friedman the $19,000 that he agreed to repay in 2016. As we previously observed, Hudson testified, "I then decided not to give him the $19,000[.]" N.T. 2/17/21, at 95. Thus, we state once more, because Friedman pled the claim in his amended complaint and the evidence at trial undisputedly supported it, the trial court erred as matter of law in concluding that Friedman was barred from recovery because he did not include the demand specifically in the post-hearing submission of proposed facts and legal conclusions.

Having found that the trial court erred in failing to enter judgment in Friedman's favor, we reverse the entry of judgment in favor of Hudson, and remand for the trial court to enter judgment in favor of Friedman for $19,000.

Judgment reversed. Case remanded with instructions. Jurisdiction relinquished.

Judge Nichols and P.J.E. Stevens concur in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/16/2023