Lawrence ANDREWS, Appellee

v.

Robert JACKSON and Mayflower Contract Services, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 17, 2002.
Filed June 3, 2002.

Eric N. Anderson, Pittsburgh, for appellant.

Nicholas F. Lorenzo, Punxsutawney, for appellee.

KELLY, J.

¶ 1 In this appeal we must determine whether a jury may specifically find a plaintiff was not "injured" in an accident, and deny compensation on that basis, where both party's medical experts testified the plaintiff suffered some injury. We hold a jury must find the plaintiff suffered some "injury," where both party's medical experts agree that the accident caused an injury, although the jury may then deny damages on the basis that the injury was not serious enough to warrant compensation. Accordingly, we affirm.

¶ 2 The relevant facts and procedural history of this appeal are as follows. The motor vehicle accident upon which Appellee's personal injury claim was founded occurred on May 22, 1995. On that day, Jackson was driving a Mayflower moving van Eastbound on Forbes Avenue in Pittsburgh, PA. He stopped for a red light at the intersection of Halket Street, but brought his vehicle to rest too far into the intersection. Appellant placed the van in reverse and began to back-up. However, the van's rearward progress caused contact with Appellee's vehicle. The front end of Appellee's car was crushed as a result.

¶ 3 Appellee went to Presbyterian Hospital following the accident with complaints of neck and back pain. At the hospital, doctors took x-ray and MRI photographs of Appellee's neck and back. Upon review of these photographs, doctors discovered a prior injury to Appellee's C–2 vertebra. Apparently, Appellee had suffered a fracture of this vertebra at least a year before the accident. While the vertebra itself was not in immediate need of repair, doctors warned Appellee that the vertebra had been weakened by the prior injury and any trauma to his head or neck could result in paralysis. Additionally, Appellee's doctor determined that Appellee had cervical arthritis that had developed into spinal stenosis before the accident. Appellee's doctor concluded the arthritis and resulting stenosis became symptomatic after the accident and contributed to Appellee's neck pain. On the advice of his doctors, Appellee underwent surgery to correct the instability in his C–2 vertebra shortly after the accident. The operation required fusing Appellee's C–1 and C–2 vertebra for strength and support. After the surgery, Appellee still complained of neck pain as well as decreased movement due to the fused vertebra. Appellant underwent a second sur-

gery (a laminoplasty) in 1998 to relieve the pressure on his spinal cord created by his spinal stenosis and arthritis.

¶ 4 Approximately two and one-half months after his first surgery, Appellee filed a civil action alleging, *inter alia,* that the accident had caused injuries to his neck and spine at C–1/C–2 and had aggravated his prior conditions. At trial, Appellee's medical expert testified that the accident aggravated Appellee's prior ailments requiring surgery to his neck and resulting in decreased movement. Appellee's expert acknowledged that Appellee had suffered from these conditions before the accident, but noted that Appellee had never complained of neck and back pain before the accident. The expert opined that the accident had awakened Appellee's prior conditions, making them symptomatic.

¶ 5 The defense's medical expert refuted Appellee's claims that the accident aggravated his prior conditions. The defense expert concluded it was fortunate that Appellee discovered the infirmity in his C–2 vertebra when he did, and stated that without the accident Appellee may not have discovered his potentially catastrophic defect until it was too late. However, the defense medical expert conceded that Appellee had suffered a soft-tissue injury (cervical strain) in the accident.

¶ 6 The defense also presented testimony at trial from a biomechanical expert. This expert did not examine Appellee for injuries caused by the accident. Instead, the expert was called to demonstrate that the minor impact of the two vehicles could not have aggravated Appellee's prior conditions. The defense expert did, however, acknowledge that Appellee could have suffered a soft-tissue injury or mild aggravation of his arthritic condition in the accident.

¶ 7 At the close of trial, the jury was instructed on negligence and causation principles and given a jury questionnaire consisting of three questions. On November 30, 2000, the jury returned a verdict finding defendants negligent, but also finding the negligence was not a substantial factor in causing Appellee's injuries. The jury awarded Appellee zero damages.

¶ 8 Appellee filed a post-trial motion for a new trial, arguing the jury's verdict was contrary to the weight of the evidence adduced at trial. On March 1, 2001, the trial court granted the motion, finding both parties' medical experts had agreed that Appellee suffered some injury as a result of the accident. The trial court granted Appellee a new trial on the issue of damages. Appellants filed this appeal in due course on March 27, 2001.

¶ 9 Appellants raise the following issues on appeal:

DID THE TRIAL COURT ERR IN AWARDING A NEW TRIAL ON DAMAGES ONLY FOLLOWING A JURY VERDICT OF NEGLIGENCE, BUT NO SUBSTANTIAL FACTOR BECAUSE SUCH AN ORDER REQUIRES UNCONTROVERTED TESTIMONY OF AN INJURY AND OBJECTIVE EVIDENCE OF THAT INJURY, BUT IN THE INSTANT CASE THERE WAS NO OBJECTIVE EVIDENCE OF AN INJURY, AND THERE WAS CONFLICTING TESTIMONY OVER THE EXISTENCE OF ANY AGGRAVATION OF PRE–EXISTING INJURY CAUSED BY THE ACCIDENT?

DID THE TRIAL COURT ERR IN AWARDING A NEW TRIAL ON THE BASIS THAT THE JURY'S VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE WHERE THE JURY FOUND THAT THE APPELLANTS WERE NEGLIGENT, HOWEVER THE NEGLIGENCE WAS

NOT A SUBSTANTIAL FACTOR IN BRINGING ABOUT THE HARM, AND WHERE THERE WAS NO OBJECTIVE PROOF OF ANY INJURY CAUSED BY THE ACCIDENT, AND THERE WAS CONTRADICTORY TESTIMONY CONCERNING WHETHER ANY INJURY COULD HAVE OCCURRED IN THE ACCIDENT?

(Appellant's Brief at 3).

¶ 10 In each of Appellants' issues, they argue the medical experts did not agree on whether the accident aggravated Appellee's existing spinal condition, or whether the accident caused Appellee soft tissue damage to his neck. Appellants also assert their biomechanical expert testified an injury could not have been caused by this minor accident. Appellants maintain it was the jury's duty to evaluate the credibility of the witnesses presented and contend the jury must have found the defense witnesses more credible than Appellee's witness on the issue of causation. Appellants conclude the trial court improperly assumed the jury's role when it granted a new trial on damages, where the jury had already found Appellants' negligence was not a substantial factor in causing Appellee's injuries. We disagree.

■■■ ¶ 11 The applicable standard of review of the court's decision to grant a new trial is as follows:

The decision of whether to grant a new trial is within the sound discretion of the trial court. We will not disturb the trial court's decision unless the court palpably abused its discretion or committed an error of law. In evaluating an order awarding a new trial, we keep in mind that a new trial is warranted where the jury's verdict is so contrary to the evidence as to shock one's sense of justice. However, a new trial should not be granted because of a mere conflict in

testimony or because the trial judge, on the same facts, would have arrived at a different conclusion.

*Mano v. Madden,* 738 A.2d 493, 495 (Pa.Super.1999) (*en banc*) (internal citations omitted).

■■■ ¶ 12 Where there is no dispute that the defendant is negligent and both parties' medical experts agree the accident caused **some** injury to the plaintiff, the jury may not find the defendant's negligence was not a substantial factor in bringing about at least **some** of plaintiff's injuries. *See Neison v. Hines,* 539 Pa. 516, 521, 653 A.2d 634, 637 (1995); *Mano, supra. Compare Henery v. Shadle,* 443 Pa.Super. 331, 661 A.2d 439 (1995), *appeal denied,* 542 Pa. 670, 668 A.2d 1133 (1995); *Holland v. Zelnick,* 329 Pa.Super. 469, 478 A.2d 885 (1984). Such a verdict is contrary to the weight of the evidence adduced at trial. *See Neison, supra; Mano, supra.* In other words, "a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic." *Neison, supra* at 521, 653 A.2d at 637.

¶ 13 In *Mano,* the defendant's vehicle rear-ended the plaintiff's vehicle. At trial, x-ray and MRI results taken of plaintiff's neck and back did not clearly indicate the plaintiff had suffered any injury in the accident. Evidence was also presented that the plaintiff had suffered similar injuries in two prior accidents. However, the plaintiff's medical expert testified that the accident caused the plaintiff a "neck strain sprain," as well as herniated disks in his spine, nerve root irritation to his lower back, and general pain and inflammation throughout his back and neck region. The defendant's medical expert refuted the plaintiff's claims of continuing pain or physical limitations caused by the accident, **but** the expert conceded the plaintiff had

suffered strains of the neck and back as a result of the accident.

¶ 14 At the close of evidence, the trial court granted the plaintiff's motion for directed verdict on the issue of negligence, leaving the jury to decide only the issues of causation and damages. After deliberation, the jury found the accident was not a substantial cause of the plaintiff's injuries and did not award the plaintiff damages. The plaintiff filed a motion for a new trial arguing the jury's verdict was against the weight of the evidence. The trial court agreed and granted the plaintiff a new trial limited to the issue of damages. On appeal, this Court affirmed the trial court's order, holding: "It is impermissible for a jury, in a personal injury case, to disregard the uncontroverted testimony from the experts for both parties that the plaintiff suffered some injury as a result of the accident in question." *Mano, supra* at 497.

¶ 15 Similarly, in *Neison, supra* our Supreme Court affirmed a trial court's grant of a new trial on damages, where the medical witnesses agreed the accident in question caused at least **some** injury to the plaintiff, although the witnesses disagreed as to the extent of the injuries caused. In that case, the plaintiff was stopped, waiting to make a right turn, when she was struck from behind by the defendant's vehicle. The impact caused the plaintiff's head to strike the back window of her sports car and break the window. At trial, the defendant admitted his negligence. Thus, only the issues of causation and damages were before the jury. The plaintiff's medical experts testified that the accident was the direct cause of a cervical strain suffered by the plaintiff. The defendant's only medical expert also testified that the plaintiff suffered a cervical strain in the accident, but that injury had healed before he examined the plaintiff. Never-

theless, the jury returned a verdict in favor of the defendant, awarding the plaintiff no damages. The plaintiff filed a post-verdict motion for a new trial on damages, which the trial court granted. On appeal, our Supreme Court affirmed the trial court, holding, "In light of this uncontroverted evidence, we cannot find that the trial court abused its discretion in ordering a new trial." *Neison, supra* at 522, 653 A.2d at 638.

¶ 16 These cases, in which both parties' experts agree the accidents caused some injury, are distinguishable from *Henery, supra* and *Holland, supra.* In *Henery* and *Holland,* the experts for both sides disagreed that the accidents in question caused the soft tissue injuries alleged. Although the defense experts in both cases conceded that a soft tissue injury "could have" or "may have" been caused by the accidents, neither expert conceded the accident actually caused any soft tissue injuries. Thus, the juries in *Henery* and *Holland* were justified in finding the accidents did not cause the plaintiffs' injuries, as this finding did not contradict a consensus among the medical experts that the accident caused some injury.

¶ 17 On the other hand, in the cases where the experts agreed the accidents caused some injury, but the jury found to the contrary, that finding was determined to have contradicted all the evidence of the medical experts. A new trial on damages was warranted, because such a verdict bears no rational relation to the evidence adduced at trial. *See Neison, supra; Mano, supra.*

¶ 18 Most recently, this Court considered the issue in *Majczyk v. Oesch,* 789 A.2d 717 (Pa.Super.2001) (*en banc*). In that case, the defendant's medical expert conceded the plaintiff had some sore muscles after the accident. The jury, however, did not award the plaintiff damages. This

Court concluded that the jury may decide, based on their experience and common sense, that a claimed injury is not serious enough to award compensation. In other words, the jury is permitted to find the defendant's negligence caused an "injury," but that the "injury" caused was not compensable. Thus, this Court held, "that the determination of what is a compensable injury is uniquely within the purview of the jury." *Id.* at 726. Our reading of *Majczyk*, however, does not lead us to conclude that a jury may disregard uncontroverted expert witness testimony that the accident at issue did not **cause** some injury. Rather, we conclude the jury must find the accident was a substantial cause of at least some injury, where both parties medical experts agree the accident caused some injury. While the jury may then find the injuries caused by the accident were incidental or non-compensable and deny damages on that basis, the jury may not simply find the accident did not "cause" an injury, where both parties' medical experts have testified to the contrary.

¶ 19 In the instant case, Appellee's medical expert acknowledged that Appellee had suffered a type two odontoid fracture of his vertebra at least one year before the accident. (N.T. Deposition of Dr. William F. Donaldson III, 1/13/00, at 20, 27). The expert also conceded that Appellee had cervical arthritis that had developed into spinal stenosis before the accident occurred. *Id.* at 20, 42. However, Appellee's expert opined that the accident awakened these injuries making them symptomatic. *Id.* at 59–63. The expert noted that Appellee had no complaints of chronic neck and back pain before the accident, but complained of sharp pain in his neck after the accident. *Id.* Appellee's expert concluded to a reasonable degree of medical certainty that Appellee's neck pain was caused by the accident and that the subse-

quent surgery was necessitated by the accident. *Id.*

¶ 20 The defense's medical expert refuted Appellee's claim that the accident aggravated Appellee's prior injuries and that the need for surgery was occasioned by the accident. However, the expert conceded that the accident caused Appellee a cervical strain. (N.T. Deposition of Dr. John W. Bookwalter, III, 1/18/00, at 24, 27 and 36). The following question and answer occurred during Appellant's direct examination of Dr. Bookwalter:

[APPELLANT'S ATTORNEY]: Doctor, do you have an opinion within a reasonable degree of medical certainty what [Appellee's] injuries were that were directly related to the minor vehicle accident of May 22, 1995?

[DR. BOOKWALTER]: It's my opinion that he had a simple cervical strain and nothing more.

(*Id.* at 36).

¶ 21 These were the only two medical experts presented at trial. Although the defense also presented testimony from Dr. McNish, an expert in the field of biomechanics, Dr. McNish did not examine Appellee to determine actual injuries. (N.T. Dr. Thomas McNish, 9/7/00, at 23–24). Dr. McNish's testimony was offered simply to demonstrate that the forces acting on Appellee during the accident were minimal and not likely to cause injury. However, even Dr. McNish's testimony did not foreclose the possibility that Appellee may have suffered a soft tissue injury (cervical strain) or aggravation of Appellee's arthritic condition as a result of the accident. *Id.* at 62. In fact, Dr. McNish testified "that the forces in the accident with [Appellee] in the prestressed position may have resulted in muscle soreness and perhaps, some irritation of the arthritic, ongoing arthritic process in his lower spine, but

I said that the motions and the magnitude of the forces, when combined with his clinical course, would not support that it had any effect whatsoever on his C1–C2 interface." *Id.*

¶ 22 Moreover, when the trial court reviewed Appellant's issues on appeal, the court stated,

The evidence of record permits this Court to grant a new trial to [Appellee] on the sole issue of damages because the jury's verdict on the element of causation went against the weight of the evidence. The jury disregarded the sufficient evidence of record that established, among other things, that [Appellee's] injuries were caused by the accident.

Although it is true that the Appellants' expert witness disagreed with the opinion provided by [Appellee's] medical expert with respect to the degree and extent of the injuries sustained in the accident, the experts' testimony, as a whole, was consistent with respect to the subject of causation. The experts both opined that [Appellee] sustained an injury from the accident.

\* \* \*

The evidence of record evinces that the experts agree that [Appellee] was injured from the accident. The jury erred in reaching their conclusion because said conclusion was against the weight of the evidence.

(Trial Court Opinion, dated May 21, 2001, at 4–6).

¶ 23 Here, both parties' medical experts agreed that Appellee sustained some injury as a result of the accident. *See Mano, supra; Neison, supra.* Therefore, the jury was not permitted to disregard the uncontraverted evidence of causation and find Appellant's negligence was not a substantial factor in causing at least some injury to Appellee. *Id.* Had the jury found the accident caused some injury to Appellee, but declined to award damages because the jury concluded the injury was so minor as to be noncompensable, we would not have disturbed their verdict. *See Majczyk, supra. See also Davis v. Mullen,* 565 Pa. 386, 773 A.2d 764 (2001) (holding jury may refuse to award damages for pain and suffering even-though jury found defendant's negligence caused plaintiff injury). However, the jury's verdict that Appellee was not "injured" in the accident goes against the weight of the competent evidenced adduced by both parties' medical experts at trial. *See Mano, supra; Neison, supra.*

¶ 24 Based upon the foregoing, we hold a jury may not disregard the uncontradicted testimony of both party's medical experts that Appellant suffered some injury in the accident, although the jury may then deny damages on the basis that the injury was not serious enough to warrant compensation. Accordingly, we affirm the order of the trial court awarding Appellee a new trial on the issue of damages.

¶ 25 Order affirmed.