**Christina M. BOSTANIC, Appellee**

v.

**Lori Ann BARKER–BARTO, Appellant.**

Superior Court of Pennsylvania.

Argued April 24, 2007.

Filed Nov. 9, 2007.

Joseph M. Morelli, Pittsburgh, for appellant.

Thomas R. Matvey, Aliquippa, for appellee.

BEFORE: McCAFFERY, DANIELS and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Lori Ann Barker–Barto (Barker–Barto) appeals from the order entered on October 19, 2006, in the Court of Common Pleas of Beaver County, that granted Christina M. Bostanic's (Bostanic) post-trial motion for a new trial. Upon review, we affirm in part and remand.

¶ 2 The relevant facts and procedural background of this case are as follows: On July 2, 2002, Barker–Barto was driving her vehicle on Ohio Avenue in Rochester, Beaver County, Pennsylvania. There were no passengers occupying the vehicle with Barker–Barto. Upon arriving at the intersection of Ohio Avenue and Adams Street, Barker–Barto stopped her vehicle at a stop sign and intended to turn left onto Adams Street.[1] According to her testimony, Barker–Barto stopped at the intersection and slowly moved forward because she could not see past several illegally parked vehicles.

¶ 3 While Barker–Barto's vehicle inched forward into the intersection, Bostanic was traveling southbound on Adams Avenue in her vehicle. Bostanic's vehicle struck Barker–Barto's vehicle and spun the front end of Barker–Barto's vehicle 45 degrees from the road and into an adjacent school's property.

¶ 4 Both parties exited their respective vehicles and denied that they suffered any injury to the responding police officer. Neither party received emergency care immediately after the accident. Three days later, Bostanic sought treatment from Dr. Mario Grippa, a chiropractor that treated her previously from 1996–2000 for cervicothoracic strain and sprain injury. At trial, Dr. Grippa testified that he diagnosed Bostanic on the basis of her subjective complaints and his observation of muscle tightness in her neck and back. Upon the referral of her attorney, Bostanic was also treated by Dr. Paul Hoover, who concluded that, as a result of the accident, she sustained permanent right upper extremity thoracic outlet syndrome and upper right arm atrophy. Bostanic attempted to return to work, but she was unable to tolerate work and did not resume working until September 2002, but she could not work full days. In January 2003, Bostanic

---

1. Ohio Avenue traffic is controlled by a stop sign at the intersection; Adams street traffic has the right of way at the intersection.

quit her job because she could not tolerate the pain she suffered while working, and she began to work at home intermittently.

¶5 Bostanic filed a complaint sounding in negligence against Barker–Barto on May 7, 2004. In the complaint, Bostanic asserted that Barker–Barto's negligence in operating her motor vehicle caused the accident that occurred on July 2, 2002, and that the accident resulted in Bostanic suffering permanent injuries, including, but not limited to, the following: (1) cervical and thoracic strain and sprain syndrome; (2) right thoracic scoliosis; (3) right arm pain; (4) paresthesias in the right hand; (5) right shoulder pain; and (6) chronic headaches. A jury trial was conducted on May 30–31, 2006. At trial, Bostanic offered her own testimony and the videotaped deposition testimony of Drs. Grippa and Hoover. In response, Barker–Barto presented her own testimony and the videotaped deposition testimony of Dr. James Cosgrove, her expert witness, who performed an independent medical examination of Bostanic.

¶6 Trial concluded, and the jury entered a verdict in favor of Barker–Barto. The interrogatories on the special verdict form submitted to the jury stated, in pertinent part, the following questions:

**Question 1:**

Do you find that [Barker–Barto] was negligent?

Yes *X* No ____

If you answer Question 1 "No[,]" [Bostanic] cannot recover and you should not answer further questions and should return to the Courtroom. If you answer "Yes" to Question 1[,] proceed to Question 2.

**Question 2:**

Was [Barker–Barto's] negligence a factual cause in bringing about [Bostanic's] harm?

Yes ____ No *X*

If you answer Question 2 "No[,]" [Bostanic] cannot recover and you should not answer further questions and should return to the Courtroom.

Jury interrogatories and verdict, 5/31/2006, at 1 (unnumbered).

¶7 Following entry of the verdict in favor of Barker–Barto, Bostanic filed a timely post-trial motion, which asserted that the verdict was against the weight of the evidence. Specifically, Bostanic claimed that the verdict was against the weight of the evidence because Dr. Cosgrove, Barker–Barto's expert witness, conceded during his deposition that Bostanic suffered some injury as a result of the accident. The trial court granted Bostanic's post-trial motion, vacated the verdict entered in favor of Barker–Barto, and ordered a new trial. The trial court authored an opinion in support of its order granting a new trial.

¶8 Barker–Barto filed a timely notice of appeal to this Court from the trial court's grant of a new trial. The trial court did not order Barker–Barto to file a concise statement of matters complained of on appeal, and it did not author a second opinion in this case.

¶9 Barker–Barto presents the following issues for our review:

1. Whether the verdict of the jury must be upheld since the jury was free to reason that [Bostanic] was contributorily negligent and that [Bostanic's] negligence was the factual cause of her harm?

2. Whether the jury is free to reject medical testimony based solely on the subjective complaints of [Bostanic] where the credibility of [Bostanic] is at issue?

3. Whether the trial court erred in granting a new trial but failing to

limit the grant of a new trial to the "conceded injuries?"

Barker–Barto's brief, at 4.

¶ 10 Barker–Barto's issues contend that the trial court disregarded the jury's verdict improperly and that the verdict was not against the weight of the evidence. Our Supreme Court has summarized an appellate court's standard of review in an appeal from the grant of a new trial as follows:

> This Court has repeatedly emphasized that it is not only a trial court's inherent fundamental and salutary power, but its duty to grant a new trial when it believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice. Although a new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion, a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

* * *

> [ ... ]. Our court has consistently held that appellate review of the trial court's grant of a new trial is to focus on whether the trial judge has palpably abused his discretion, as opposed to whether the appellate court can find support in the record for the jury's verdict.

* * *

> To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must examine the record and assess the weight of the evidence; not, however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury. Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion.

*Thompson v. City of Philadelphia*, 507 Pa. 592, 598–600, 493 A.2d 669, 672–73 (1985) (citations and quotation marks omitted).

¶ 11 Barker–Barto argues first that the verdict was supported by the evidence because the jury found that her negligence was not the factual cause of Bostanic's harm but, instead, was the result of Bostanic's contributory negligence.[2] The interrogatories to the jury on the special verdict form reveal that the jury did not make a specific finding regarding Bostanic's contributory negligence because the jury followed the special verdict form explicitly and returned to the courtroom after answering Question 2 on the special verdict form. Therefore, the jury did not reach Question 3, which pertained to whether Bostanic was contributorily negligent.

¶ 12 We were presented with a jury-finding scenario identical to the present case previously in *Hilbert v. Katz*, 309

---

**2.** Barker–Barto also asserts that Bostanic waived any objection to the special verdict form and, as a result, could not receive the relief of a new trial. This argument is belied by the record. The transcript indicates that Bostanic objected to any consideration of her contributory negligence by the jury through its use of the verdict form. *See* N.T. Trial, 5/30–31/2006, at 93. Further, Barker–Barto's waiver argument is misplaced; Bostanic presented a challenge to the verdict based on the inconsistency between the testimony presented by Barto's expert and the jury's findings, not the phrasing of the special verdict form.

Pa.Super. 466, 455 A.2d 704 (1983) (plurality). Upon our review of the record, we concluded that the uncertainty regarding the underlying reason for the jury's verdict arising from the jury's responses to the interrogatories did not, of itself, necessitate the granting of a new trial. *Katz*, 455 A.2d at 707. Further, we concluded that such a finding did not contradict the evidence to such a degree that it shocked our collective sense of justice. *Id.*, 455 A.2d at 707. Consequently, we reversed the trial court's grant of a new trial. *Id.*, 455 A.2d at 707.

¶ 13 Although not bound by *Katz*, we find its rationale instructive, and, therefore, we contrast its logic to the facts of the present case in order to determine whether the trial court's decision to grant a new trial was proper. *See, e.g., In re V.E.*, 417 Pa.Super. 68, 611 A.2d 1267, 1274 (1992) (Superior Court not bound by its plurality decisions; it may apply or refuse to apply plurality decision based on soundness of plurality decision's rationale). Unlike the case in *Katz*, the trial court's reasons for vacating the jury's verdict were based on its conclusion that Barker–Barto's expert witness conceded liability in this case and, therefore, that the verdict was inconsistent with this testimony. This potential error did not arise in the privacy of jury deliberations but, instead, arose in the trial court's presence at trial. Therefore, Barker–Barto's emphasis on the possibility of the jury's consideration of contributory negligence as being supportive of the original verdict is a red herring; liability was contested hotly by the parties in this case, and we cannot employ hindsight analysis for the purpose of divining the jury's reasons for its original verdict. *Cf. Katz*, 455 A.2d at 707 (uncertainty surrounding jury's verdict not a valid reason for granting a new trial).

¶ 14 Clearly, the trial court's grant of post-trial relief in the present case was based upon its finding that the evidence was *not* in conflict as to whether Bostanic suffered an injury because all medical expert witnesses, both for Barker–Barto and for Bostanic, agreed that Bostanic suffered an injury as a result of the accident. The grant of a new trial on this basis is not an abuse of discretion. *See, e.g., Kraner v. Kraner*, 841 A.2d 141 (Pa.Super.2004). Consequently, we are unwilling to disturb the trial court's decision to grant a new trial and reinstate the jury's verdict on the basis of Barker–Barto's speculation regarding Bostanic's possible contributory negligence. *Katz*, 455 A.2d at 707. However, our inquiry does not end here.

¶ 15 Barker–Barto argues that the trial court improperly invaded the jury's credibility-determining province by granting a new trial in this case. Barker–Barto argues that the jury was free to reject Bostanic's medical expert witness' testimony regarding her injuries, which was based upon her subjective complaints and, consequently, that the jury was free to credit the testimony of Dr. Cosgrove, who conceded that Bostanic suffered an "injury" in the accident but contended that the manifestation of that injury was demonstrated only through Bostanic's subjective complaints of pain. Given the subjectivity of Bostanic's complaints regarding her injuries, Barker–Barto asserts that the injuries were not compensable. We disagree with Barker–Barto's argument.

¶ 16 As we held in *Andrews v. Jackson*, 800 A.2d 959 (Pa.Super.2002),

the jury may decide, based on their experience and common sense, that a claimed injury is not serious enough to award compensation. In other words, the jury is permitted to find the defendant's negligence caused an "injury," but that the "injury" caused was not com-

pensable. Thus, [ ... ] "the determination of what is a compensable injury is uniquely within the purview of the jury." [These principles,] however, [do] not lead us to conclude that a jury may disregard uncontroverted expert witness testimony that the accident at issue [caused] some injury. Rather, we conclude the jury must find the accident was a substantial cause of at least some injury, where both parties' medical experts agree the accident caused some injury. While the jury may then find the injuries caused by the accident were incidental or non-compensable and deny damages on that basis, the jury may not simply find the accident did not "cause" an injury, where both parties medical experts have testified to the contrary. *Andrews,* 800 A.2d at 964 (bracketed language supplied). In the case before this Court, there is no dispute that Barker–Barto's expert, Dr. Cosgrove, conceded "some injury" to Bostanic resulting from the accident, *i.e.,* a cervical sprain or strain injury, but he disputed the other, more serious diagnoses of Bostanic's expert medical witnesses, *i.e.,* "subluxations" of the back, thoracic outlet syndrome, and decreased range of motion in the spine and arms.

¶ 17 Although Dr. Cosgrove termed Bostanic's complaints resulting from this injury as minor and "subjective" and, as Barker–Barto argues, not compensable, the jury's special verdict form does not reflect that they considered the subjectivity or seriousness of the injury when entering a verdict on Barker–Barto's behalf. Rather, the second interrogatory asked whether "[Barker–Barto's] negligence [was] a factual cause in bringing about [Bostanic's] harm," and the jury answered this interrogatory in the negative. Given the concession of injury made by Dr. Cosgrove, the jury's answer to this interrogatory was against the weight of the evidence. *Id.,*

800 A.2d at 964. It may well be that Bostanic's injuries were insignificant to the point that they were not compensable, but the jury's verdict form reflects that they did not consider that question. Consequently, the subjectivity of Bostanic's complaints as described by Dr. Cosgrove is of no moment. *Id.,* 800 A.2d at 964. Therefore, as the jury's finding with regard to the second interrogatory was against the weight of the evidence, the trial court did not abuse its discretion when it ordered a new trial in this case. *Id.,* 800 A.2d at 964. Accordingly, Barker–Barto's argument fails.

¶ 18 Lastly, Barker–Barto argues that the trial court's order of a new trial should be limited to the conceded injuries. We agree with Barker–Barto's argument. In *Elliott v. Ionta,* 869 A.2d 502, 510 (Pa.Super.2005), we explained that, where a defense medical expert's concedes "some injury," but where the severity of the injury is disputed at trial, the proper course is to conduct a new trial limited to only those injuries that were uncontroverted by the defense's medical experts. As the trial court's order of a new trial is not limited in this manner, we reverse its order in part and remand with the directive that the forthcoming trial be limited to a resolution of Bostanic's uncontroverted injuries.

¶ 19 Order affirmed in part. Case remanded with instructions. Jurisdiction relinquished.