J-A21007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COLLEEN BOYLE AND STEPHEN FLUCK | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EINSTEIN MEDICAL CENTER MONTGOMERY AND EINSTEIN MEDICAL CENTER PHILADELPHIA | : | No. 3619 EDA 2018 |
| | : | |
| | : | |
| APPEAL OF: EINSTEIN MEDICAL CENTER PHILADELPHIA | : | |

Appeal from the Order Dated November 19, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  4230 Feb. Term, 2016

BEFORE:  BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                **FILED FEBRUARY 14, 2020**

Einstein Medical Center Philadelphia[1] ("Einstein" or "Appellant") appeals

from the November 19, 2018 order awarding a new trial limited to a damages

determination in the above-captioned civil action.  We affirm.

The trial court has offered an apt summary of the factual background:

Plaintiffs are Colleen Boyle and her husband Stephen Fluck (collectively, ["Appellees"]).  Ms. Boyle had successful right knee replacement [reconstruction] surgery at Einstein by Dr. Julius K. Oni, M.D. [("Dr. Oni").]  The next day, October 2, 2015, Ms. Boyle fell in her room at Einstein after being left unassisted by a physical therapist[, Gregory Galuska,] when she wanted to use the

---

[1]  All claims against Einstein Medical Center Montgomery were dismissed via stipulation of the parties.  **See** Stipulation to Discontinue, 4/1/16, at 1-2.

bathroom. After Ms. Boyle was helped off the floor and back to bed, Dr. Oni was summoned.

Dr. Oni arrived, removed the bandage from Ms. Boyle's right knee, and found that her surgical wound was open all the way down to the implants. N.T. Trial, 6/26/18, at 154-56. He performed emergency surgery on Ms. Boyle later that day. He found a significant tear or rupture of her patellar tendon, which is the tendon that connects the kneecap bone to the tibial bone. *Id.* at 157-58. He also found a significant tear or rupture of the medial and lateral retinaculum. *Id*. at 162-63.

Following this second operation, Dr. Oni put Ms. Boyle in a locked, hinged knee brace. She could not bend her knee at all in the brace. His plan was to lock her knee in extension for approximately six weeks to allow the patellar tendon to heal. *Id*. at 164-65.

[Appellees] contended that the physical therapist was negligent in failing to take Ms. Boyle back to bed for her to use a bedpan. Instead, the therapist took her to a bathroom which was not equipped with a toilet she could use, failed to summon a female staff member to assist her in the bathroom, instructed her to use a bedpan while standing, and left her alone and unaided in the bathroom where she fell.

Ms. Boyle sued Einstein for the actions and omissions of the physical therapist. [Appellee] Stephen Fluck asserted a claim for loss of consortium.

Trial Court Opinion, 11/19/18, at 1-2 (cleaned up).

The case ultimately went to trial before a jury, which was held over five days from June 22, 2018 through June 28, 2018. At trial, Einstein's expert, Laurence R. Wolf, M.D. ("Dr. Wolf"), testified that Ms. Boyle's accidental fall had ruptured her right patellar tendon and necessitated emergency surgery. *See* N.T. Trial, 6/27/18, at 109-10. The trial court also instructed the jury prior to deliberation that the parties "have agreed that [Ms. Boyle] sustained some injury in this incident" and that "if you find that the defendant was

- 2 -

negligent, you must award the plaintiff some damage for those injuries that were sustained as a result of the defendant's negligence." *Id*. at 199. The jury concluded that Einstein had been negligent. *See* Jury Verdict Sheet, 6/28/18, at 1. However, the jury also "found that Einstein's negligence was not a factual cause of the injuries sustained . . . and failed to award [Appellees] any damages." *See* Trial Court Opinion, 11/19/18, at 1.

Appellees filed a post-trial motion requesting a new trial limited to a determination of damages. In relevant part, Appellees averred that the jury's verdict on causation was legally erroneous and against the weight of the evidence. *See* Appellees' Post-Trial Motion, 7/2/18, at ¶¶ 5-8. Einstein opposed Appellees' motion. Ultimately, the trial court filed an opinion and order holding that the jury's verdict on causation was legally erroneous and against the weight of the evidence in light of the testimony presented by Einstein's expert Dr. Wolf and the trial court's instructions to the jury. The trial court awarded a new trial limited to the issue of damages. *See* Order and Opinion, 11/19/18, at 4 ("A jury's verdict finding negligence but that the negligence was not a substantial factor in causing the plaintiff's injuries, is contrary to the weight of the evidence when the defendant's expert agreed that the accident caused some injury.").

Einstein timely appealed and the trial court filed an opinion under Rule 1925(a). Einstein presents two issues for our consideration:

> 1. Did the trial court abuse its discretion in ordering a new trial as to damages because the jury's verdict, that any negligence by the defendant was not a factual cause of any harm suffered by the

plaintiffs, is consistent with and supported by the evidence and the jury instructions, and does not "shock one's sense of justice"?

2. In the alternative, did the trial court err in granting a new trial as to damages only?

Appellant's brief at 3.

The following principles of Pennsylvania law guide our review:

Trial courts have broad discretion to grant or deny a new trial. The grant of a new trial is an effective instrumentality for seeking and achieving justice in those instances where the original trial, because of taint, unfairness or error, produces something other than a just and fair result, which, after all, is the primary goal of all legal proceedings. Although all new trial orders are subject to appellate review, it is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.

*Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1121-22 (Pa. 2000) (internal citations and quotes omitted); *but see Hilbert v. Katz*, 455 A.2d 704, 706 (Pa.Super. 1983) ("[A]n appellate court may be more exacting in reviewing a new trial grant than in reviewing a new trial denial.").

The instant award of a new trial relates to the jury failing to find factual causation, which the trial court concluded was against the weight of the evidence presented at trial. We note that such a holding is "[o]ne of the least assailable" in the appellate context. *Fazio v. Guardian Life Ins. Co. of America*, 62 A.3d 396, 413 (Pa.Super. 2012) ("Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced

by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.").

Appellees' claims against Einstein sound in negligence, which require proof of: (1) a duty to conform to a certain standard for the protection of others against unreasonable risks; (2) the defendant's failure to conform to that standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage to the plaintiff. *See*, *e.g., Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348, 355 (Pa. 2018).

Instantly, Appellees' claims of negligence focused upon whether Einstein's physical therapist,[2] Mr. Galuska, breached the relevant standard of care for a medical professional with respect to his care of Ms. Boyle. The basic contours of the events were not disputed at trial. On the day after her reconstruction surgery, Mr. Galuska was assisting Ms. Boyle in walking from her recovery room to the hospital's physical therapy facilities. Mr. Galuska testified that he knew that Ms. Boyle was particularly at-risk for a fall that day. *See* N.T. Trial, 6/27/18, at 13. At that time, Ms. Boyle was ambulating with the assistance of a walker. After she stood up, Ms. Boyle suddenly and urgently needed to go to the bathroom. She entered the recovery room bathroom using her walker. Both Ms. Boyle and Mr. Galuska realized that the toilet in her room was too low for her to be able to use it in her post-operative

---

[2] Einstein stipulated to the fact that Mr. Galuska is an employee. *See* N.T. Trial, 6/25/18, at 174.

- 5 -

condition. Accordingly, Ms. Boyle asked Mr. Galuska several times to get a nurse to assist her in using the in-room bedpan. While Ms. Boyle was still standing in the bathroom, Mr. Galuska handed her a bedpan, which required Ms. Boyle to take one of her hands off the walker. He then departed the room, stating that he would give Ms. Boyle "some privacy." It was unclear whether he expected Ms. Boyle to use the bedpan in the bathroom, or whether he was trying to locate a nurse to assist Ms. Boyle. She attempted to turn her walker around and return to bed, but began to involuntarily urinate. *See* N.T. Trial, 6/25/18, at 119-20. While trying to use the bedpan, Ms. Boyle was unable to maintain her grip on the walker with her one free hand and fell. *Id*.

In relevant part, Ms. Boyle and Mr. Galuska disagreed on the precise nature of their verbal exchanges with one another during these events. Mr. Galuska testified that Ms. Boyle requested that he leave her alone with the bedpan in the recovery room bathroom. *See* N.T. Trial, 6/27/18, at 19-20. In contrast, Ms. Boyle testified that she explicitly and repeatedly requested the assistance of a nurse. *See* N.T. Trial, 6/25/18, at 116-20.

The parties also presented expert testimony regarding the relevant standard of care. Appellees expert, Dr. Sarah Jameson, concluded that Mr. Galuska's decision to hand Ms. Boyle a bedpan and leave her unassisted in the bathroom breached his duty of care. *See* N.T. Trial, 6/25/18, at 78 ("[K]nowing that she was a fall risk, to hand her a bedpan that would require her to take her hand off the walker was an error in judgment."). She also

stated that even if Ms. Boyle had asked to use the bedpan in the bathroom without assistance, Mr. Galuska should not have acquiesced to that request in light of Ms. Boyle's condition at the time. *Id*. at 79 ("I think he should have explained to [Ms.] Boyle that that's just not safe and I have to keep you safe, and I'm going to have to walk you back to the bed.").

Einstein's expert, Dr. Brian Leggin, espoused a different viewpoint. He argued that Mr. Galuska had simply "respected" Ms. Boyle's "autonomy" in heeding her alleged requests to leave the room so that she could use the bedpan unaided. *See* N.T. Trial, 6/27/18, at 68-69. Based upon the jury's finding of negligence, it chose to credit Appellees' version of events as they relate to a breach of the standard of care. *See Martin v. Evans*, 711 A.2d 458, 463 (Pa. 1998) ("Credibility determinations are within the sole province of the jury. A jury is entitled to believe all, part or none of the evidence presented. . . ." (internal quotations omitted)).

Einstein emphasizes that it did not explicitly concede any of the required elements of negligence. The above discussion of the competing testimony presented by the parties bespeaks that the "duty" and "breach" elements of negligence were, indeed, hotly contested. Moreover, there was also significant evidence presented by the parties regarding the alleged damages that Ms. Boyle suffered, which focused on her complicated medical history and her ongoing rehabilitative needs. *See* N.T. Trial, 6/26/18, at 7-68, 103-140, 143-72 (Appellees' medical experts testifying regarding the extent of her

injuries caused by the fall); *compare with* N.T. Trial, 6/27/18, at 55-75, 86-117 (Einstein's medical experts testifying regarding the extent of Ms. Boyle's injuries caused by the fall). However, the trial court's holding in this case specifically concluded that the jury erroneously failed to find "factual causation"[3] based upon the evidence of record. The trial court concluded that this discrete element was **not** reasonably disputed by the parties, and held that the jury failed to recognize the import of the evidence presented and neglected to follow the trial court's instructions. We agree.

In its analysis, the trial court focused upon the testimony of another of Einstein's experts, Dr. Wolf, who testified as follows regarding the results of Ms. Boyle's fall:

> Q:   Now, the next day there was **this fall and injury to Ms. Boyle's patellar tendon.** Was that repaired?
>
> A:   That was repaired the day of the accident.
>
> Q:   The day of the fall.
>
> A:   The day of the fall, yeah. Because it's an emergency, because **when the wound splits open** and the germs can get in, so that's done as an emergency, yes.
>
> Q:   What is done to fix that? When the patella ruptures, what does the doctor do?
>
> A:   Well, there's lots of ways you can do it, but he basically sutured it using a special wire called FiberWire and a heavy

---

[3] Under Pennsylvania law, "a negligent act is a cause-in-fact of the plaintiff's injuries if the harmful result would not have come about but for the negligent conduct." *Straw v. Fair*, 187 A.3d 966, 993 (Pa.Super. 2018) (internal quotations omitted).

> suture called PDS, and basically **stitched it back to the bone**, stitched it through holes in the bone. So you're just kind of knitting it back to the bone.
>
> Q: The patellar tendon was placed back on the bone where it had been before?
>
> A: Yes. **It actually pulled off, you know, the patellar tendon**, it attaches down to the – it's called the tibial tubercle. If you feel on your leg there's like a bump right there. **So it actually pulled off that bone. So Dr. Oni reattached it to that part of the bone using stitches.**

N.T. Trial, 6/27/18, at 109-10 (emphasis added). The trial court reasoned that this testimony established that Ms. Boyle suffered a ruptured patellar tendon and that emergency intervention was necessary due to her original surgical wound splitting open as a direct result of her fall. *Id*. In relevant part, Dr. Wolf testified that the emergency surgery was necessary to restore Ms. Boyle's right patellar tendon to "its proper alignment" and thereby allow "her extensor mechanism, which is her quadriceps muscle, her kneecap, quad tendon, [and] patellar tendon to work." *Id*. at 110. This testimony was identical to that presented by Appellees' experts. *See* N.T. Trial, 6/26/18, at 66, 153-59 (testifying that the fall caused Ms. Boyle's surgical wound to split open and ruptured her right patellar tendon).

With specific respect to this testimony, the trial court provided the following instruction to the jury regarding negligence and damages:

> In this case, ladies and gentleman, the parties have agreed that the plaintiff sustained some injury in this incident. The defense medical experts testified that [Ms. Boyle] sustained some injury, but the defense disputes the extent of the injuries sustained. Therefore, if you find that the defendant was negligent, you must

award the plaintiff some damage for those injuries that were sustained as a result of the defendant's negligence.

*Id*. at 199. These instructions are in parity with the Pennsylvania Suggested Standard Civil Jury Instructions. *See* Pa. SSJI (Civ.), § 7.60 (same).

Indeed, Einstein's counsel agreed to the issuance of these instructions during the following exchange with the trial court:

> TRIAL COURT: 7.60, damages in case of disputed negligence and disputed extent of injury. That eliminates the need for factual cause.
>
> DEFENSE COUNSEL: I don't think that's appropriate.
>
> TRIAL COURT: You don't think what is appropriate?
>
> DEFENSE COUNSE: I think factual cause is the standard.
>
> TRIAL COURT: If there is a doctor on the defense side that says there was an injury caused by – well, that there was an injury sustained in the incident, as a result of the incident, that's an admission of fact against the defendant and takes factual cause out of the case.
>
> DEFENSE COUNSEL: Well, there are multiple –
>
> TRIAL COURT: That's what that charge deals with.
>
> DEFENSE COUNSEL: Yeah, but there's also multiple claims of damage here. I mean, there's claims about braces and second – left leg and –
>
> TRIAL COURT: And this charge simply says that if you don't – because I don't have the text from [plaintiff's counsel], I'm going to have to find it. It's 7.60. The parties agree that the plaintiff sustained some injury in the incident. The defense medical expert testified that the accident caused some injury to plaintiff. The defense disputes the extent of the injury. Therefore, if you find the defendant negligent, you must award the plaintiff some damage for those injuries.

DEFENSE COUNSEL:  I'm just thinking if that's appropriate here.

TRIAL COURT:  That's why I'm asking.

PLAINTIFF'S COUNSEL:  Well, I'm requesting it.  I think it's appropriate.  Your guy certainly admits that she had to have emergency surgery in all this.  He's contesting the requirement for braces.

TRIAL COURT:  Certainly the need for the second surgery on October 2nd –

DEFENSE COUNSEL:  It's okay.

TRIAL COURT:  -- constitutes a damage.

DEFENSE COUNSEL:  It's okay.

TRIAL COURT:  All right.  Onward.

N.T. Trial, 6/26/18, at 204-6.  Therefore, Einstein assented to this instruction.

Einstein is technically correct in observing that it never explicitly conceded the issue of causation during trial and that Appellees never sought a directed verdict.  *See* Appellant's brief at 20.  However, those arguments ultimately miss the mark.  The trial court did not hold that Einstein conceded the issue of causation, and it did not enter a directed verdict.  Rather, it concluded that the jury erred in finding no causation due to the content of Einstein's own expert testimony and the relevant jury instructions.  More specifically, Dr. Wolf's testimony clearly enumerated that Ms. Boyle's fall caused her right patellar tendon to rupture, "split" her surgical wound open, and necessitated additional surgery.  *See* N.T. Trial, 6/27/18, at 109-10.  In light of this testimony, the trial court instructed the jury that if it found

negligence, it was also bound to also find causation and award damages to Appellees. *Id*. at 199. Stated more succinctly, the causative link between Ms. Boyle's injuries and her fall was not reasonably disputed by the parties.

Under the precedent of this Court, "[w]here the defense's medical expert concedes some injury as a result of the accident, the jury's finding of no causation is against the weight of the evidence." *Smith v. Putter*, 832 A.2d 1094, 1097-98 (Pa.Super. 2003); *see also Bostanic v. Barker-Barto*, 936 A.2d 1084, 1088 (Pa.Super. 2007) (holding that trial court properly held that jury's verdict finding defendant negligent but concluding that negligence was not a "factual cause" of the accident was against the weight of the evidence where "all medical expert witnesses . . . agreed that plaintiff "suffered an injury as a result of the accident"); *Andrews v. Jackson*, 800 A.2d 959, 964 (Pa.Super. 2002) (same). These cases are analogous to the present circumstances.

In relevant part, Einstein's arguments before this Court erroneously conflate the issues of causation and damages by emphasizing, *ad nauseam*, that Appellees have not sufficiently established "damages" that are separate from Ms. Boyle's extensive pre-existing medical conditions. **See** Appellant's brief at 17-23. But the question of whether Ms. Boyle's fall-related injuries are compensable is distinguishable from the question of whether Einstein's negligence was the cause of those injuries. **See Mirabel v. Morales**, 57 A.3d 144, 152 n.8 (Pa.Super. 2012) ("[L]iability is not intertwined with damages

when the question of damages is readily separable from the issue of liability.").

In **Smith**, this Court delineated the critical distinction between damages and causation:

> The determination of what is a compensable injury is uniquely within the jury's purview; a jury may choose to find that a plaintiff's pain or discomfort is the sort of 'transient rub of life' for which compensation is not warranted. Nonetheless, a jury cannot determine that a defendant's negligence is not a substantial factor in causing the injury where the undisputed evidence indicates otherwise. **In other words, if a jury finds causation, it may go on to find the injury incidental or non-compensable and award no damages. We would not disturb that verdict. But a jury is not free to find no causation where the defense expert concedes as much.**

**Smith**, **supra** at 1098 n.1 (internal citations omitted, emphasis added).

The jury found that Einstein was negligent with respect to Ms. Boyle's post-surgery fall. The testimony of Einstein's own medical expert established that Ms. Boyle's fall resulted in some injury and required emergency surgery. Consistent with the trial court's instructions, the jury was bound to find causation but failed to do so. Based on our review of the certified record and governing law, we discern no legal error or abuse of discretion in the trial court's award of a new trial. **Accord Smith**, **supra** at 1097-98; **see also Bostanic**, **supra** at 1088; **Andrews**, **supra** at 964.

We must also address Einstein's argument that the new trial should not be limited to a determination of damages. The following basic legal precepts govern our review of this question:

> [N]ew trials may be limited to specific issues only when this procedure will be fair to both parties. Where the question of

- 13 -

negligence or contributory negligence is not free from doubt, it is an abuse of discretion for the trial judge to grant a new trial on the issue of damages alone. Specifically: a trial court may grant a new trial limited to the issue of damages only where: (1) the question of liability is not intertwined with the question of damages, and (2) the issue of liability is either (a) not contested or (b) has been fairly determined so that no substantial complaint can be made with respect thereto.

***Kindermann v. Cunningham***, 110 A.3d 191, 193 (Pa.Super. 2015).

Einstein's discussion of this issue is cursory. Beyond reciting the above standard of review, its substantive argument consists of a single paragraph that merely parrots the case law. ***See*** Appellant's brief at 24.

As an initial matter, we reiterate that the question of damages in this case is readily separable from the issue of liability. Based on our discussion above of Ms. Boyle's accident and her resulting injuries, we find this Court's holding in ***Mirabel*** instructive: "The question of the nature and extent of the injuries [plaintiff] suffered and the amount she [is] owed to compensate her for those injuries was not related, and readily separable, to the question of who was liable for the accident." ***Mirabel***, ***supra*** at 152 n.8. The issues of liability and damages are not inextricably intertwined in this case. ***Id***.

Moreover, Einstein did not reasonably challenge causation at trial and fails to identify any errors in the certified record that would cast doubt upon the jury's separate finding of negligence. As such, liability in this case was "fairly determined." ***Id***. at 152 ("Liability is 'fairly determined' if there were no errors on the record that might have affected the jury's verdict on liability."); ***see also*** Trial Court Opinion, 11/19/18, at 10-11 ("Ms. Boyle's

- 14 -

testimony described clearly and in great detail the negligent conduct of Einstein's physical therapist that caused her to fall. It was within the province of the jury to believe her testimony over that of the physical therapist.").

Finally, although Einstein argues that limiting the new trial to the issue of damages would work a "substantial injustice," we are persuaded that the true inequity here would be in forcing Appellees to relitigate the issue of liability without cause. **See Mano v. Madden**, 738 A.2d 493, (Pa.Super. 1999) ("[Defendant] had a fair opportunity to litigate the issues of negligence and contributory negligence. It would be unfair to the [plaintiffs] to force them to re-litigate these issues in order to obtain appropriate damages for themselves . . . ."). Based on the foregoing discussion, we discern no legal error or abuse of discretion in the trial court's award of a new trial limited to the issue of damages.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/20

- 15 -